## FIDELER et al. v. NORTON et al.

1. PAROL CONTRACT CONCERNING THE SALE OF REAL PROPERTY—PART PERFORMANCE—MAY BE ENFORCED.

    A parol agreement concerning the sale of real property cannot be avoided in equity on the ground that it is not in writing and is therefore within the statute of frauds, when it has been partly performed. In such case there must be such part performance as will render it a fraud on the plaintiff to permit the defendant to refuse to carry out the contract.

2. AGENT—TAKING TITLE IN FRAUD OF PRINCIPAL—CONSTRUCTIVE TRUST.

    An agent employed to obtain title to real estate for his principal who makes use of the means and facilities furnished by the principal to obtain title for his own use and benefit, holds such title in trust, and a court of equity will compel a conveyance of the title to his principal. And in such case the agent cannot plead the statute of frauds in defense of an action to compel a conveyance.

3. CASH ENTRY OF LAND—ACT OF JUNE 15, 1880 AGREEMENT TO ENTER UNDER AND CONVEY—NOT AGAINST PUBLIC POLICY.

    An agreement by one having a valid homestead entry on public lands, to make cash payment and entry under the act of June 15, 1880, and to transfer to another the title thus obtained, is not invalid as against public policy.

Filed October 4, 1886.

Appeal from the district court of Minnehaha county.

Order sustaining demurrer to complaint.

*Boyce, Noyes & Boyce,* for plaintiffs and appellants.

The agreement set up in complaint though parol will be enforced. The statute of fraud does not forbid. The general principle is that equity relieves against fraud and the violation of confidence or of fiduciary relations by making him who obtains the advantage a constructive trustee for him who is entitled to it. Pomeroy's Equity Jurisprudence, 155, 1044; Webster v. King, 3 Cal. 348; Hardenbergh v. Bacon, 33 Cal. 356; Grower v. Andrew, 59 Cal. 119; Roller v. Spillmore, 13 Wis. 26; Squire's Appeal, 70 Pa. St. 268; Seichrist's Appeal, 66 Pa. St. 241; Civil Code of Dakota, 1292, cases cited, 2 Pom. Eq. Jur. 487 *n,* 3—628 *n.* 1.

Such an agency though it relate to real estate may be created and proved by parol. Hardenbergh v. Bacon, 33 Cal. 356; Jenkins v. Eldridge, 3 Story C. C. 289; Switzer v. Skiles, 3 Gilman (Ill.) 534.

Fideler might have made cash entry of the land. 2 Copp's Public Land Laws, 687–8, 655; 1 Id. 498, 186. Less tangible claims to lands than his have been recognized as the subjects of fiduciary agencies. A squatter claim, original or derived, has been held sufficient. Rogan v. Walker, 1 Wis. 528; Pratt v. Ayer, 3 Chandler, Wis. 263; Bryant v. Hendricks, 5 Iowa, 256, and cases therein cited; Rogers v. Simmons, 55 Ill. 76; Webster v. King, 33 Cal. 348.

In this case the trust is raised from a fraud causing a loss, and is not based merely on a fiduciary relation; nor is the relief which is granted me based on the verbal agreement by which the relation of principal and agent is formed. Hidden v. Jordan, 21 Cal. 93; Sandfoss v. Jones, 35 Cal. 481; Ryan v. Dox, 34 N. Y. 307; Civil Code of Dakota, 1297; cases cited 2 Pom. Eq. Jur. 631, n. 1; Judd v. Mosely, 30 Iowa, 428; Bryant v. Hendricks, 5 Iowa 256; Snow v. Flannery, 10 Iowa 318; Jackson v. Stevens, 108 Mass. 94; Wallace v. Carpenter, 85 Ill. 590; Rogan v. Walker, 1 Wis. 528; McDonough v. O'Neil, 113 Mass. 92; Civil Code Dakota, 280.

Defendants cannot take advantage of their own wrong and refuse to account for the fruits of the undertaking on the ground of its illegality. As decisive of the point see Brooks v. Martin, 2 Wall. 70; Fackler v. Ford, 24 How. 322; and Union Pacific R. R. Co. v. Durant, 5 Otto, 576. The last is a land case compelling conveyance by trustee.

*Winsor & Swezey*, for respondents.

The demurrer admits only such facts as are well pleaded. The complaint omits essential facts, and states others merely as conclusions of law.

If we understand counsel, they concede that in the case at bar there is not any resulting trust arising in favor of plaintiffs, as such a trust arises only in favor of a party who pays "all or a certain aliquot part of the purchase money." Olcett v. Bynum, 17 Wall. 44; Burden v. Sheridan, 36 Ia. 125; Constructive trusts, Perry on Trusts, 166.

A further reply to the claim that the supposed case is one for the construction of a trust in favor of Fideler, is that having no interest in the land, and furnishing no part of the purchase money or expenses, a parol contract is void under the statute of frauds. 2 Story Eq. Jur. § 1201 a; 2 Sugden on Vendors, 163, (9th Ed.); Botsford v. Burr, 2 Johns. Ch. 405; Steere v. Steere, 5 Johns. Ch. 1; Smith v. Burnham, 3 Sumn. 464; Bartlett v. Pickersgill, 1 Eden 515; Perry v. McHenry, 13 Ill. 227; Walker v. Klock, 55 Ill. 362; Burden v. Sheridan, 36 Ia. 125; (14 Am. Rep. 505,) reviewing all the cases; Perry on Trusts, 135; Dunphy v. Ryan, 116 U. S. 491; Dung v. Parker, 52 N. Y. 494.

The laws of the United States prohibit the alienation of land held under homestead entry prior to final proof, and render void all contracts and transactions intended or designed to operate as a transfer. U. S. Revised Statutes, "Homesteads," § 2289, *et seq.*; Dawson v. Merrille, 2 Neb. 124; Oaks v. Heaton 44 Ia. 116, distinguishing Snow v. Flannery, 10 Ia. 318, cited by counsel.

FRANCIS, J. This is an appeal from the judgment of the district court sustaining a demurrer to the complaint and dis-

missing the action.　For a proper understanding of the points involved it is necessary to quote the complaint in full:

### "COMPLAINT.

The plaintiffs in their complaint state their cause of action as follows:

(1)　That the above named John F. Norton and J. Harry Brown, who are made defendants, as well in their partnership capacity as individually, compose the firm of Norton & Brown, of Salem, Dakota, a partnership engaged in business, at the time of the agreement hereinafter mentioned, as agents for claimants of government land under the United States land laws, in the transaction of a general real estate business, and in banking and brokerage.

(2)　That on or about the seventeenth of July, 1879, the said Magdaline Adamson made homestead entry upon the S. E. ¼ section 14, township 102, range 55, county of McCook, territory of Dakota.

(3)　That on or about the seventeenth of July, 1880, the said Magdaline Adamson conveyed, or attempted to convey, her interest in said land to ·Peter Fideler, one of the plaintiffs above mentioned; that she received in consideration of such transfer, a horse rake costing and representing $35, and that she delivered to said Fideler the duplicate receipt given her when she made her homestead entry, with a formal relinquishment of the land to the United States indorsed by her thereon.

(4)　That said relinquishment was never surrendered to the register and receiver of the local land district, to the end that the land might revert to the government and be open to entry by the said Fideler, but the said Fideler, while retaining the possession of the relinquishment, and holding the land under his control as against the said Magdaline Adamson, took no further steps at that time to perfect the transfer or attempted transfer.

(5)　That within or about the month of November, 1881, at the office of Norton & Brown, in Salem, Dakota, a verbal contract was made between Peter Fideler on one side and Norton & Brown on the other, by which the said firm of Norton &

Brown became the agents of said Fideler, in the regular course of their real estate business, for securing to said Fideler, or to his wife for him, the legal title to the land entered, as above set forth, by Magdaline Adamson; that in making this contract Norton & Brown were represented by John F. Norton, the member of said firm through whom most of the firm's land business was transacted; that the terms of this agreement, made at the time and place aforesaid, between Peter Fideler and John F. Norton, representing Norton & Brown, as aforesaid, were as follows:

'(a)   The said John F. Norton, representing Norton & Brown, as aforesaid, agreed, as a necessary preliminary to the securing by said Magdaline Adamson of a title which she might transfer, to deliver to her the relinquishment which she had given to the said Peter Fideler, to the end that she might prove up on the lands aforesaid under the act of congress approved June 15, 1880, entitled. 'An act relating to the public lands of the United States;' such delivery to be made on the express condition, however, that she should, on proving up, deed said lands to Fideler or to his wife for him, and the said Norton, representing Norton & Brown, as aforesaid, also agreed to oversee such proving up, and the execution of the deed, and to take all steps necessary to secure a valid deed to the land in question directly from said Magdaline Adamson to said Fideler, or his wife for him.

(b)   The compensation from said Fideler to said Norton, for Norton & Brown, for their services as agents in the purchase of said land, and in taking the necessary steps preliminary thereto, was to be $25.

(c)   The consideration for the deed from the above named Magdaline Adamson to the said Fideler, or to his wife for him, was to be the delivery to said Magdaline Adamson of her reliquishment, representing a valuable consideration, as aforesaid; the money expended by the said Magdaline Adamson in proving up not to exceed $200, and an amount not to exceed $50 in addition.

(d)   The consideration to Magdaline Adamson, with the

exception of the part of it which was represented by the delivery to the said Magdaline Adamson of her relinquishment of the land, was to be advanced by the said Norton & Brown, through the said Norton, or by said Norton individually; and simultaneously with the delivery to Fideler of the deed from Magdaline Adamson conveying the land to him, or to his wife for him, the said Fideler and his wife were to execute and deliver to the said firm; or to the member of said firm advancing the part consideration aforesaid, a mortgage on the land for the amount of such advances and the agent's fee of $25; the debt secured not to exceed in all $275, as above set forth.

(6) That relying upon the promises made by the said John F. Norton, representing Norton & Brown, and in pursuance of the above mentioned agreement, the said Fideler left with the said Norton the relinquishment delivered to him by Magdaline Adamson, to be used by Norton & Brown, as his agents and for his advantage, in the manner agreed upon.

(7) That Norton & Brown, through the said Norton, with said relinquishment in possession, negotiated with Magdaline Adamson, and that, as a result of such negotiations, Magdaline Adamson proved up on said land, April 12, 1882; but that when the deed from Magdaline Adamson was drawn, at or about the time of her proving up, as provided by the agreement above mentioned, the firm of Norton & Brown, through the said John F. Norton, in fraud of the rights of said Fideler, their principal, and in violation of their agreement and duty as the agents of said Fideler, caused to be inserted in said deed, as grantee, the name of J. Harry Brown, one of the said firm of Norton & Brown, the agents of said Fideler for the purchase of said land as hereinbefore set forth; and that said deed was recorded shortly after its execution in the records of land transfer in the office of the register of deeds for McCook county, Dakota.

(8) The plaintiffs are informed and believe, and therefore aver, that the said J. Harry Brown well knew the terms of the agreement between the said Fideler and his partner, John F. Norton, representing Norton & Brown, and that the said J. Harry Brown, in receiving conveyance of said land, had actual

knowledge of the fraud involved in inserting another name than that of Peter Fideler or his wife as grantee in the deed from Magdaline Adamson.

(9) That the plaintiffs have frequently demanded of Norton & Brown, by demanding of John F. Norton, the member of that firm with whom most of their dealings had been conducted, the conveyance to them, or to either of them, of the property thus conveyed to and held by one of the agents employed to make the purchase of the property for them; but that the said Norton, representing himself and his partner, the grantee as aforesaid, at first promised, but postponed the plaintiffs, and finally refused outright to make, or cause to be made, such conveyance, except on terms in violation of the agreement aforesaid, which would constitute plaintiffs substantially new cash purchasers of the land for its full value.

Wherefore, plaintiffs demand judgment against defendants:

(1) That the deed from Magdaline Adamson, as Magdaline Quick, to J. Harry Brown, conveying the S. E. ¼ section 14, township 102, range 55, county of McCook, territory of Dakota, and absolute on its face, be declared a deed to said Brown in trust for Peter Fideler.

(2) That the said J. Harry Brown be compelled to transfer by proper conveyance to Peter Fideler the legal title to said land, free from all incumbrances done or suffered by J. Harry Brown, or his partner, the said Norton, or by said firm of Norton & Brown; the plaintiffs being willing, and hereby offering specifically, to perform the agreement hereinbefore set forth, and, on receiving the conveyance of said land to said Fideler, to execute and deliver, in such form and to such person as the court may direct, a mortgage on the land to secure the amount actually advanced by said firm, or some one of its members, and the agent's fee, under the aforesaid agreement, not to exceed in all $275, and excluding all expenses incurred in connection with the land since the date of the fraudulent conveyance to J. Harry Brown.

(3) That the plaintiffs be decreed their costs in this action.

(4)   That the plaintiffs  be granted such other and further
relief as the nature of the circumstances  of  this  case  may re-
quire, and to the court shall seem proper."

In the district court counsel for  the  defendants  demurred
to this  complaint, on  the  ground  that "it does not state facts
sufficient to state  a cause of action," and  the  court  sustained
the demurrer, and dismissed the  action, with costs against the
plaintiff.   Counsel for the appellants  allege error  in  the  sus-.
taining of said demurrer, in  the  dismission of said action, and
in the rendering of judgments for defendants.

Reading  the  complaint, we  must  conclude that so far as
the facts sought to be stated are concerned, it sufficiently states
them, although it is apparent that, in some particulars,.it might
be made more full, definite and  complete.   We are not, how-
ever, to look at the  complaint with  a  merely critical  eye  in
order to ascertain how far  it  is  removed  from, or how near it
approaches to, the best and most approved forms and  methods
of artistic pleading; neither are we to apply to it the test of es-
thetic legal experience, accomplishments or  requirements, but
we are simply to determine whether or  not  it  contains  state-
ments or allegations  which, if true, (and the demurrer admits
their truth,) sufficiently set forth a cause of action; and Section
128 of our Code of  Civil  Procedure  provides that "in the con-
struction of a pleading for  the purpose of determining its effect
its allegations shall be liberally construed, with  a view of sub-
stantial justice  between  the  parties."  Thus construed,  the
complaint is sufficient in form, and, as will be seen  in  the  fur-
ther discussion of the case, the facts alleged  coustitute a cause
of action.

It is, nevertheless, well  to  here  observe, speaking gener-
ally, that there is need of much improvement in  the  matter  of
drawing and preparing papers and pleadings in proceedings in
the district courts and in the supreme court  of  this  territory.
Practitioners should promptly and  effectually banish the idea,
somewhat widely prevalent  that, under  our  codes, there is no
requirement or  necessity  for uniformity or  exactness in plead-
ing or practice, and that pleading and practice, after the pattern

of that of any or all of the states of the union, or of no known form of practice, is sufficient. The aim and effort of court and bar should be to create, perfect and establish, as nearly as possible, a complete, concise, convenient and uniform system and form of pleading and practice which shall become general throughout the territory, and be distinctively known and recognized as a Dakota product.

By the provisions of Sections 920 and 993 of our Civil Code agreements for the sale of real property, or of an interest therein, are invalid, unless the same, or some note or memorandum thereof be in writing; and it is claimed by counsel for respondents that the parol contract or agreement set forth in the complaint, as made between Peter Fideler, one of the appellants, and the respondents, is void under the statute of frauds. In order to ascertain the correctness or incorrectness of this insistment, as a distinct legal proposition, it would be necessary to inquire and determine with particularity what is embraced in the words ''sale of real property, or of an interest therein,'' and whether or not the contract or agreement set out in the complaint is one for the sale of real property, or of an interest therein, within the meaning or perview of the statute, or is one that is required by any provision of our statutes to be in writing; Section 918 of the Civil Code, providing that ''all contracts may be oral, except such as are specially required by statute to be in writing.'' But the view taken by this court of the case now at bar renders such inquiry and determination unnecessary as the case may well be decided by the application of established and clearly recognized and admitted principles, without determining whether or not said contract is within the statute of frauds. Under the circumstances of this case said contract is one, the specific performance of which could be decreed by an equity court, even though the contract itself should be within the statute of frauds.

The appellants in this action, in effect, ask the court to compel the said respondents to specifically perform the contract on their part by directing the said J. Harry Brown to transfer

the legal title to said land to said Peter Fideler, by proper con-
veyance, and thus invest the said Fideler with the title to said
land, which, by the terms of said contract, the said respondents
were to obtain for the said Fideler from the said Magdaline
Adamson, but which, in violation of said contract, the said re-
spondents took in the name of said J. Harry Brown, one of the
respondents, by having inserted, as grantee in the deed for
said land from said Magdaline Adamson, which in part per-
formance of said contract they procured from her, the name of
J. Harry Brown in place of the name of said Peter Fideler, or
that of his wife; and the statute of frauds is no bar to the
granting of such relief.

Taking the argument of counsel for the respondents in connec-
tion with the complaint, it would seem that the respondents are
seeking to hold fast to the result or gain of their own fraudu-
lent, illegal, and inequitable act, on the ground that the acts of
the appellants Peter Fideler and Magdaline Adamson, through
which they (respondents) were enabled to consummate their
design, were illegal or against public policy, and that one man
may commit fraud, or betray a trust, and be secure in the pos-
session of its fruit, if only he can show that, in the transaction
through which he obtained that fruit, some other person per-
petrated fraud, or joined him in a void contract, or in one that
was against public policy. The mind of equity is incapable of
such reasoning, and iis principles and practice forbid such a
result or conclusion. Equity will never willingly permit the
statute of frauds to be used as a shield in defense of fraud; and
while, in many cases, under proper circumstances, the statute
of frauds may prevent the compelling of one person to carry
out or fulfill the obligation or act imposed upon him by terms
of a verbal contract or agreement entered into by him with
another, yet when, (as in this case,) in the part performance of
that contract or agreement, or by means, opportunity or facili-
ties furnished by or in pursuance of the terms thereof, one of
the parties thereto fraudulently, or in betrayal of the trust or
obligation imposed upon him in and by virtue of said contract
or agreement, secures for himself the advantage or gain which,

in the carrying out of his part of said contract or agreement, he was bound by the terms thereof, in good conscience, to secure for the other party thereto, or, having secured said advantage or gain, by means of the use or carrying out of the facilities or terms of said contract or agreement, or of any of them, appropriates said advantage or gain to his own use, or takes to himself, or to another for his own benefit, what he was bound, under the very terms and conditions of said contract or agreement, to obtain for and deliver to the other party thereto, in fraud of the rights of said other party, equity will decree that he will surrender his ill gotten gain or advantage, and compel him to restore to the other party to said contract or agreement the gain or advantage which he contracted or agreed to secure for and deliver to him, but which, having secured, he appropriated to his own use, or which he secured for himself, or for another in his interest, in violation of plain principles of equity, and of the very terms and conditions of said contract or agreement in that regard. And this use, application, and exercise of equity the statute of frauds was not enacted to prevent.

The statute of frauds makes invalid an agreement for the sale of lands not in writing; and it is thereby incapable of being enforced against a defendant if he pleads the statute, unless such circumstances are presented as will warrant a court, in the exercise of equity, in enforcing the agreement, or affording relief in the face of the statute, or upon the ground of a constructive trust, (or, as the Civil Code denominates it, an "involuntary trust.") created or arising by operation of law. One of the grounds warranting such action by a court of equity is that there has been a part performance of the agreement, and our statute of frauds contains a recognition of the doctrine and application of "part performance" when it enacts that it (the statute) "does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

Having in view what constitutes a part performance sufficient to permit the enforcement of an agreement within the statute of frauds, it may be said that a parol agreement con-

cerning the sale or transfer of real property cannot be avoided in equity, on the ground that it is not in writing, and is therefore within the statute of frauds, when it has been partly performed; and this is particularly true when a confidential or fiduciary relation exists between the parties to the agreement, or results from or is created by its terms or conditions. As said by Justice STORY, more than 40 years ago, in Jenkins v. Eldredge, 3 Story 289, 290, it may be said in this case: "It appears to me that here a confidential relation of principal and agent did exist; and, that being once shown, it disables the party from insisting upon the objection that the trust is void as being by parol. The very confidential relation of principal and agent has been treated as, for this purpose, a case *sui generis*. It is deemed a fraud for an agent to avail himself of his confidential relation to drive a bargain, or create an interest adverse to that of his principal in the transaction; and that fraud creates a trust, even when the agency itself may be, nay, must be, proved only by parol." It is doubtless true that, in order to take a parol contract out of the statute of frauds on the ground of part performance, there must be such a part performance of it by the defendant, or by the plaintiff, or by both, as will render it a fraud on the plaintiff if the defendant refuses to complete the contract on his part.

That there has been such a part performance by the respondents is manifest. From the allegations in the complaint (which, as we have seen, must be taken as true,) we may conclude that the respondents performed the negotiations required of them by said agreement, to the extent that, as the result of said negotiations, the said Magdaline Adamson made proper application at the United States land office, and obtained from the government the title to said lands. and made a deed therefor, the money consideration for which the respondents advanced or paid, which deed, under said agreement, the said respondents were to obtain directly from said Adamson to said Peter Fideler, one of the appellants, or to his wife, the other appellant, and advance and pay the money consideration therefor, but which, in fraud of said appellants, and in violation of

said agreement, they took from the said Adamson to one of themselves as grantee, and now refuse to invest the said Peter Fideler, or his wife, with the title to said lands; thus seeking to defeat, destroy and render impossible of consummation the very essense, intention, object and end of said agreement.

That there has been such a part performance by Peter Fipeler, one of the appellants, also plainly appears. After the making of said agreement the said Peter Fideler, in part performance of the terms thereof, delivered to John F. Norton, one of the firm of Norton & Brown, the other parties to said agreement, the relinquishment, and the receiver's receipt upon which it was indorsed, (which relinquishment was purchased and received by him, said Fideler, from said Magdaline Adamson, for valuable consideration to her paid by said Fideler,) to be used by said Norton & Brown as agents of Peter Fideler, and for his advantage, in its delivery by them to said Magdaline Adamson, in securing for and to him (said Fideler) the title and transfer of said lands, for the very securing of which said agreement was entered into. This relinquishment was to Peter Fideler, the key to the whole situation. The relinquishment, being to the United States, was of no effect as to the filing upon said lands, until presented and filed in the proper United States land office; but when there presented and filed, it would cause the cancellation of the former filing of said Magdaline Adamson on said lands, and the said lands would then again become a part of the public domain, subject to entry or filing, the same as though said Magdaline Adamson had never made her homestead entry thereon. So that the said Fideler, with this relinquishment in his possession, could, by presenting and filing it at the proper United States land office, have filed upon or entered the said lands, and thereby secured the right himself to purchase said lands under the act of June 15, 1880. By surrendering, then, said relinquishment to his agents, Norton & Brown, in pursuance of said agreement, said Fideler gave up the very thing which, while he retained it, gave him means and facility for securing the lands for himself, and the surrender of which made his securing of the lands dependent

upon the good faith of his agents and the said Magdaline Adamson. The surrender of the relinquishment by Fideler to his said agents, and the return of it by them to said Magdaline Adamson, also reinstated her in her former position and relation with respect to said lands, and induced her to go to the land office, and, as one having a homestead filing or entry upon said lands, make the purchase of said lands from the United States under the provisions of said act of June 15, 1880, which she did upon the return of the relinquishment to her, and the doing of which by her was one of the main objects sought to be attained in the making of said agreement. The surrender of said relinquishment by said Fideler to his said agents, Norton & Brown, made the carrying out of ther terms of said agreement possible, and, at the same time, through such surrender, the respondents, said agents, were able to perpetrate the fraud upon Fideler, and obtain for themselves, by breach of the obligations imposed upon them by the terms and conditions of said agreement, and by law and good conscience, the paper title to the lands in question. When, therefore, said Fideler, in fulfillment of one of the terms of said agreement, delivered said relinquishment to said Norton & Brown, there was a very important and substantial part performance of said agreement on his part, and such a part performance as rendered it a fraud upon him when the respondents not only refused to carry out the said agreement on their part, but made use of this very part performance of Fideler to deprive and defraud him of, and secure to themselves, the thing or advantage which was to come to him and be his through and by means of this, his part performance, under the terms of said agreement.

An agent who has entered into a parol agreement to negotiate for and obtain the title to certain lands for and in behalf of the other party to the agreement, and procure a deed for said lands from the owner thereof, directly to said other party, or to his wife, cannot by partly performing said agreement, secure or take to himself, or to another in his interest or for his benefit, the title to said lands, and hold it in fraud of the said other party thereto, on the plea that the agreement is

within the statute of frauds; and in such a case equity will afford relief to the party defrauded or injured, notwithstanding the fact that the agreement itself, not being in writing, is within the statute of frauds. And this relief will be all the more readily and properly extended whenever it appears that the party defrauded or injured has himself partly performed the agreement in any of its substantial or essential particulars. The appellants are entitled to the relief prayed for, on the ground of part performance.

They are also entitled to relief upon another principle, the existence and application of which largely depend upon the doctrine and fact of part performance as a legal, equitable and actual circumstance. Under the said agreement, and the allegations of the complaint, admitted by the demurrer to be true, when the said John F. Norton, one of the firm of Norton & Brown the respondents, having partly performed said agreement, which had then also been partly performed by Peter Fideler, with whom they made said agreement, secured and took the deed for said lands from said Magdaline Adamson in the name of J. Harry Brown, the other member of said firm. as grantee, then, under the circumstances of this case, the said John F. Norton and the said J. Harry Brown, and said firm of Norton & Brown, agents of said Peter Fideler, and respondents on this appeal, took the said deed, and the title transferred thereby, and now hold the same in trust for the ber efit of the said Peter Fideler; this being clearly a case in which the doctrine or principle of a constructive or involuntary trust created or arising by operation of law—frequently recognized and given effect to by courts—should be applied. See, in this connection, Sections 1288, 1290–1292, 1296, 1301, 1304. Civil Code.

As said in Dumphy v. Ryan, 116 U. S. 498, S. C. 6 Sup. Ct. Rep. 486: "The statute of frauds is founded in wisdom, and has been justified by long experience;" but as also remarked in the same case, "Courts of equity to prevent the statute from becoming an instrument of fraud, have in many instances relaxed its provisions."

We then conclude that even if the agreement in question,

was, when made, invalid under the statute of frauds, it has, in this case been so far taken out of the statute, and so removed from its invalidating force and effect, that it may be enforced, and the relief sought by the appellants may properly be granted, on the ground of part performance, and to prevert the statute from itself being used or operating as a means or instrument of fraud, and by reason of a constructive or involuntary trust which has arisen by operation of law from the circumstances of the case, making the respondents trustees of the appellants, holding the title to said lands for their (appellants) benefit. If the agreement is not within the statute of frauds, it can clearly be enforced, and the appellants are entitled to the like relief. See Rose v. Hayden, 10 Pac. Rep. 554–564; also, Union Pac. R. Co. v. Durant, 95 U. S. 576–579; and Williams v. Morris, Id. 456, 457.

The respondents were acting, not only as real estate agents, but also as the agents of the said appellant Peter Fideler, and there is very little, if any, difference in the principles that should govern such a relation and that of attorney and client. In either case the relation was a fiduciary one, and both the agent and the attorney (who is, in fact, only an agent of a higher grade) hold the interests committed to them by their employer as a sacred and absolute trust, not to be bartered, perverted or used in the betrayal of the obligations arising out of the relation.

The language of Justice SWAYNE, in Railroad Co. v. Durant, 5 Otto 579, may well be applied in this case, (substituting "respondents" for "trustee" and "appellee,") viz: "The position assumed by the respondents in this case is not unlike that of one who, having deprived the owner of the possession of his property, when called to account civilly or criminally, should insist that the owner's title was fatally tainted with fraud and that hence the offender had the right to 'take and carry away,' and keep and enjoy, the property himself with impunity. The conduct of the respondents, stripped of the verbiage with which it has been surrounded, and viewed in its naked-

V.4DAK.—18

ness strongly offends the moral sense of the judicial mind."

One other point remains to be disposed of. It is contended by the attorneys for the respondents that no constructive trust could arise in this case, because, as they assert, "the attempted conveyance by the claimant of her interest in said land to Fideler, and his contract with Norton & Brown to secure a conveyance in another way, are illegal and void as against public policy." After a careful examination of this point, I am unable to discover that it has any foundation or place in law or reason. The contention that Magdaline Adamson, when she made her homestead entry or filing upon the lands in question, made affidavit that her application was made for her own exclusive use and benefit, and that her entry was made for the purpose of actual settlement and cultivation, and rot, either directly or indirectly, for the use or benefit of any other person, and that, therefore, "the employment of defendants to procure her to make final proof for the benefit of plaintiffs, and, as a part of the same transaction, convey to Peter Fideler, was in contravention of public law," has no weight, as it appears that the entry by said Magdaline Adamson was made on July 17, 1879, and her relinquishment to the United States, and the delivery thereof to Fideler, occurred July 17, 1880. There being, then, one year between the date of her entry and that of her relinquishment, the case of a relinquishment executed so soon after the date of the filing or entry as to give grounds for suspicion of fraud is not presented. And there is no proof that when she made her entry, and the said affidavit required by law, she had entered into any agreement to relinquish the lands or dispose of her right or interest therein to said Fideler, or had any such intention. On the contrary, the presumption is that she had not; and neither the law or the court will presume fraud or wrong in the absense of proof or facts upon which to base the presumption, or strain their vision in a voyage of discovery in seeking to find some pretext for declaring a contract void, as against public policy, which upon its face, and in the light of the surroundings, appears to be *bona fide*, and not to contravene any social, moral or legal requirement. Surely it

was not against public policy for the said Magdaline Adamson to make homestead entry July 17, 1879, and swear that it was for purposes of settlement and cultivation, and for her own benefit, etc., and then, a year after that date, relinquish her right in said land to the United States in the interest of another person, and abandon her former intention of settlement and cultivation. Who is injured? Certainly not the public. What code of morals is violated? None. What law is broken or trampled upon? None.

Counsel for respondents have evidently confounded a "final proof" with what is necessary to be done in obtaining land from the government under the provisions of Section 2 of said act of June 15, 1880. The two proceedings are very dissimilar in form and substance. Said Section 2 of said act of June 15, 1880, provides "that persons who have heretofore, under any of the homestead laws, entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by *bona fide* instruments in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the government upon said lands shall be taken as part payment of said price; provided, this shall in nowise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws." Under this section, one who, before the passage of the act, has entered lands under any of the homestead laws, may purchase the same from the government at the government price, and no affidavit of settlement, residence, or cultivation, or of non-alienation, as in case of "final proof," is required. It is simply a cash transaction,—a sale by the government, and a purchase by the entry-man or his assignee, and is called a "cash entry."

The said Magdaline Adamson had made a homestead entry upon said land prior to the passage of said act, and was entitled to avail herself of its provisions, and purchase said land from the government; and it was not illegal, nor was it against pub-

lic policy, for her to take back the relinquishment, which had never been filed, and agree to convey (and to convey) the title to said land which she might acquire under said purchase, to said Fideler; nor was it against public policy for said Fideler and said Norton & Brown to enter into an agreement that the said Norton & Brown, as the agents of said Fideler, should negotiate with said Magdaline Adamson, and procure her to purchase said land from the government, under said act of June 15, 1880, and convey it, after said purchase, to said Fideler or his wife. In other words, the said parol agreement entered into by and between the said Peter Fideler and the said Norton & Brown was and is not void as against public policy, and the appellants cannot be deprived of or denied relief, and the respondents be protected in or excused for their fraud, on the plea of "void as against public policy" sought to be interposed by counsel.

The situation of the respondents, if the said contract or agreement, and the said acts of Magdaline Adamson, were void as being against public policy, does not demand consideration. It may, however, be said that in that case their title to the lands in controversy would be equally as tainted as the title of said Fideler thereto, of which, under the said plea of "void as against public policy," they seek to deprive him. And the arm of equity is long, sinewy, and powerful, and its hand peculiarly flexible.

The three errors assigned are well taken, and the judgment of the district court is reversed.

W. E. CHURCH, J., (L. K. CHURCH, J., *concurring.*) I concur in the judgment in this case, upon the following grounds:

1. The relinquishment obtained by Fideler from Mrs. Adamson, and for which he paid her $35, was not only a thing of value, but it was an instrument designed by her to transfer to Fideler her rights in the land. Without it no person could have acquired the government title except Mrs. Adamson, and she only by perpetrating a fraud. Clearly, then, when Fideler furnished this instrument to defendants for the purpose of ena-

bling them to procure the title, he supplied that without which they could not have acquired such title, and which represented, in fact, so much of the purchase price of the property. By the use of this instrument they did obtain the title; but instead of procuring it in the name of their principal, fraudulently took title themselves. This clearly created a trust, and rendered them liable to an action to compel the performance by them of their contract to place the title in the name of their principal.

2. It is alleged that the contract was void as against public policy. I am of the opinion that the statute of 1880 created between the government and those embraced within its provisions a *quasi* contract of sale, which entitles the settler to purchase the land merely on payment of the price. It must be conceded that Mrs. Adamson was one of those thus entitled. Either the relinquishment executed by her was such an instrument in writing as the statute expressly contemplates, in which case her transferee, Fideler, was legally entitled to complete the purchase, or it operated to transfer her equitable interests, and thus, at least, give her a right to complete the purchase for his benefit. I am unable to dircern in this aspect of the contract anything immoral or against public policy. Nor do I think there is any greater force in the contention that the affidavit filed by her at the time of making her settlement in anywise precluded her from making this transfer, or affect it in any way. If it was essential to her obtaining a settlement, it must have been within the contemplation of the act which expressly recognizes transfers made notwithstanding such affidavits.

3. If the contract was against public policy, defendants cannot be heard to allege it. Union Pac. R. Co. v. Durant, 5 Otto, 576.

For these reasons, I think the judgment should be reversed.

PALMER and McCONNELL, JJ., dissenting.

TRIPP, C. J., not sitting.

PALMER, J., *(dissenting)*. My Brother McCONNELL, and myself do not concur in the decision of the majority of the court in this case. The decision clearly avoids the real ques-

tion of law, arising upon demurrer to the complaint, as did counsel for appellants in their brief, where it is assumed that "the complaint in this action states a cause of action," The threshold question presented in this case is whether the complaint states facts sufficient to constitute a cause of action.

The complaint is set forth at length in the opinion of my Brother FRANCIS, speaking for the majority of the court. There is, however, no examination of its statement of facts. Upon "reading the complaint," the court concludes, and in support of its conclusion, says: "Reading the complaint, we must conclude that, so far as the facts sought to be stated are concerned, it sufficiently states them, although it is apparent that in some particulars it might be made more full, definite and complete. We are not, however, to look at the complaint with a merely critical eye, in order to ascertain how far it is removed from, or how near it approaches to the best and most approved forms and methods of artistic pleading; neither are we to apply to it the best of esthetic legal experience, accomplishments or requirements, but we are simply to determine whether or not it contains statements or allegations which, if true,   *   * sufficiently set forth a cause of action."

The only authority cited by the court for this rule of pleadings is Section 128, Code Civil Proc.: "In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties." "Thus construed," the court declares, "the complaint is sufficient in form, and, as will be seen in the further discussion of the case, the facts alleged constitute a cause of action."

That the rule of pleading in Dakota be not misunderstood, the court, leaving the examination of the case, observes, generally, in this wise: It is nevertheless well to here observe, speaking generally, that there is need of much improvement in the matter of drawing and preparing papers and pleadings in proceedings in the district courts, and in the supreme court, of this territory. Practitioners should promptly and effectually banish the idea, somewhat widely prevalent, that, under our Codes,

there is no requirement or necessity for uniformity or exactness in pleading or practice, and that pleading and practice after the pattern of that of any or all of the states in the Union, or of no known form of practice, is sufficient. The aim and effort of court and bar should be to create, perfect, and establish, as nearly as possible, a complete, concise, convenient and uniform system and form of pleading and practice. which shall become general throughout the territory," (omitting the next clause, as to "a Dakota product.")

Having thus concluded the principal question arising upon this demurrer, the court proceeds to decide certain other important questions of law, one relating to an alleged constructive trust as to the property in question, and the other as to the effect of the statutes and the public policy concerning public lands. Upon both of these questions there is considerable conflict of authority and uncertainty in the law. It is not intended, however, to consider in this opinion what is the better law upon these questions, for, in our view, if the facts stated in the complaint are not sufficient to constitute a cause of action, these questions do not arise.

To illustrate the conflict of authority on the subject of a constructive trust, where, as in this supposed case, an agent purchases or acquires property in which the principal has no present interest, with his own money, we will refer to a few leading cases: Burden v. Sheridan, 36 Iowa, 125, 14 Amer. Rep. 505, reviewing the cases, and following the authority of Story in his Equity Jurisprudence, § 1201a; Sugd. Vend. & Pur. (9th Ed.) 163; Perry, Trusts, § 135, and the cases therein cited. *Contra:* Rose v. Hayden, (a recent case in Kansas,) 10 Pac. Rep. 554, where it is held to be established by the weight of authority, that the agent can hold no beneficial interest in the property so acquired; citing nearly all the decisions on both sides. And on the other question discussed by the learned judge in the opinion of the court, as to the effect of the federal statutes and public policy concerning public lands, on a transaction such as is supposed in this case, an examination of the authorities will show much conflict and uncertainty in the pres-

ent law. On these questions I express no opinion, for upon the facts stated in the complaint, in my view, no such questions are before the court.

Recurring, now, to that part of the opinion of the court in this case above quoted, which so briefly and peremptorily disposes of the question as to the sufficiency of the complaint in its "statement of the facts constituting a cause of action," required by the Code, we first premise that the section of our Code there referred to (128) does not, in our opinion, at all sustain the decision. That section is the same as Section 159 of the New York Code of 1848–49—the primary of all the codes—as it remained in 1873, and the same as Section 452 of the California Code of Civil Procedure. It is merely a provision governing "the construction" of a pleading. It is a rule of interpretation of the language of the pleading, but in no sense excuses the want of any allegation or statement of fact upon which the cause of action depends. 2 Wait, Pr. 310, 311; Emery v. Pease, 20 N. Y. 62; Clark v. Dillon, 97 N. Y. 370. In this last case cited, the court of appeals, by RUGER, C. J., says: "The former rule has been so far modified by the Code as now to require them [pleadings] to be liberally construed, with a view to substantial justice between the parties. This modification has, however, been held to extend only to matters of form, and not to apply to the fundamental requisite of a cause of action." Page 373.

There are other declarations of the Code that plainly determine and make certain what, in substance, this statement of the facts constituting a cause of action must contain. There is, first, the provision that "the rules by which the efficiency [sufficiency] of the pleadings is to be determined are those prescribed by this act." Section 109. This is is the rule in all the codes. Pom. Rem. § 433. Referring to the complaint, this act prescribes that it shall contain "a plain and concise statement of the facts constituting a cause of action." Section 111. That the complaint does not state facts sufficient to constitute a cause of action is made a cause of demurrer. Section 113. And this objection that the complaint does not state facts sufficient to

constitute a cause of action is not waived by a failure to demur. Section 117; Van Alstyne v. Freday, 41 N. Y. 174; Munger v. Shannon, 61 N. Y. 251; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. Rep. 420.

In this last case, held that error in overruling a demurrer to the complaint which states no cause of action could be reviewed on motion in arrest of judgment, and is open to review upon a writ of error. The court there says: "When the declaration fails to state a cause of action, and clearly shows that, upon the case as stated, the plaintiff cannot recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave, and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict."

Under these provisions of the code, wherever found, there is at the present time a general uniformity in respect to the fundamental principles of pleading. Pomeroy, in his very able work on Remedies, on this point, says: "But this conflict [which at first appeared] was, in by far the greater part of the states, confined to the earlier periods of the reform, and has virtually disappeared. There is a substantial agreement among the courts in respect to the general principles which they have finally adopted. Whatever differences now exist, arise in the process of applying these fundamental doctrines to particular cases. The confusion which actually prevails, to a very great extent in several of the states, results, not from any uncertainty either in the general principles or in the more subordinate rules, but from an entire ignorance or disregard of them by pleaders, and from a neglect to enforce them by the judges." Section 513. This writer in a later section says: "The fundamental and most important principle of the reformed pleading —the one from which all the others are deduced as necessary corollaries—is the following: The material facts which constitute the grounds of relief should be averred as they actually existed or took place, and not the legal effect or aspect of those facts, and not the mere evidence or probative matter by which

their existence is established." Section 517. In other words, a legal conclusion is of no effect in a pleading, and must, upon demurrer, be disregarded. Wallingford v. Mutual Society, 34 Moak, Eng. R. 65; Pratt v. Lincoln Co., 61 Wis. 62, 20 N. W. Rep. 726; Quinney v. Stockbridge, 33 Wis. 505, where the allegation that the land in question is, "by the laws of the state of Wisconsin, exempt from taxation," is held to be a mere conclusion of law. In the other Wisconsin case, *supra*, it is said: "To put in issue the existence of a town as a matter of fact, the complaint should have stated the facts from which such conclusion could have been drawn, and not the mere conclusion itself. This is an elementary principle in the law of pleading."

In Sheridan v. Jackson, 72 N. Y. 170, the action was for the recovery of rents and profits of certain lots in Brooklyn. The plaintiff alleged in his complaint that he "was on the nineteenth day of November, 1856, entitled to the possession of such lots, and the rents, issues and profits thereof, and has been since and still is entitled to the same." Held a mere allegation of a conclusion of law. Complaint dismissed on motion at opening of trial. Affirmed, all the judges concurring.

In a recent case, decided upon demurrer to the declaration, in the United States supreme court, where the pleading alleged loss and damage from fraud, this court of ultimate authority adopts the same rule. Alabama v. Burr, 115 U. S. 435, 6 Sup. Ct. Rep. 81. WAITE, C. J., there says: "Pleadings must state facts, and not conclusions of law merely, and the allegation in this case that the loss arose from the fraud is only a conclusion of law." Demurrer sustained.

A leading case in Missouri is Pier v. Heinrichoffen, 52 Mo. 333, where the requirements of the Code are, in substance the same. The court there delares the rule: "Hence the great improvement of our Code consists in requiring the pleadings to contain a plain and concise statement of the facts constituting a cause of action or matter of defense. Facts, and not evidence nor conclusions of law, must be distinctly stated. Every fact which the plaintiff must prove to maintain his suit is constitutive in the sense of the Code, and must be alleged." Page 336.

Take the complaint in question, set forth in full in the abstract and in the opinion of the court; read it; examine it with care; reduce it to its material elements; extract from its allegations all the facts stated; expunge or disregard all the suppositions and assumptions of the pleader,—"the facts sought to be stated," as FRANCIS, J., in the opinion of the court, puts it; and the manifest conclusions of law therein,—and we have a mere skeleton, not able to stand alone. As is said in the opinion in Emery v. Pease, 20 N. Y. 62, concerning the plaintiff's complaint: "His averments are too feeble."

The subject matter of this action, in which the plaintiff claims the beneficial estate upon a supposed constructive trust, is a tract of land described as "the S. E. ¼ section 14, township 102, range 55, county of McCook, territory of Dakota." There are no facts pleaded showing this to have been public land, or that it was ever owned or possessed by any one, or is of any value. All that is alleged as to the title or interest of Adamson, the original claimant, is that about July 17, 1879, "Magdaline Adamson made homestead entry" upon the land (describing it as above). There is no allegation that she was qualified to enter land under the homestead laws, or that the entry was made under any known provisions of law, or at any office or before any officers known to the law, or that she ever made settlement, or had any occupancy or improvements upon the land, or that she ever paid any fees to the proper officers, or performed any act to make entry thereon. Not a single matter of fact to show that she ever acquired any right or interest in or to the land. The bare, bald allegation that, at a certain time, she "made homestead entry" upon the land, which is plainly a conclusion of law, and not grounded upon any facts stated. It is then alleged that one year afterwards, about July 17, 1880, Adamson "conveyed, or attempted to convey, her interest in said land" to Peter Fideler, one of the plaintiffs. How conveyed, or attempted to convey? By what instrument or act on her part? None whatever; but it is alleged "that she received, [from whom we do not know] in consideration for such transfer, a horse-rake costing and representing $35." This is no allega-

tion of value. Costing whom $35, and when did it cost anybody $35? When it was new, or old and worn out? And in whose estimate did the horse-rake represent $35? This is no statement of fact that the plaintiff ever parted with anything of value. The only other thing Adamson did to accomplish the transfer of her supposed interest in the land is alleged as follows: "She delivered to said Fideler the duplicate receipt given her when she made her homestead entry, with a fo:mal relinquishment of the land to the United States indorsed by her thereon." This is the first revelation we have of "the duplicate receipt given her." There is no allegation that she was ever given such receipt, and so the fact is here assumed by the pleader. It is, we conclude, one of "the facts sought to be stated." Having delivered to Fideler the duplicate receipt, with an absolute relinquishment of the land to the government, the fair conclusion is that her supposed interest in the land was extinguished, and her attempt to convey to Fideler, who it is alleged "took no further steps    *   *   *    to perfect the transfer, or attempted transfer," an idle form.

The only other allegation relating to Adamson's acquisition of title is found in Paragraph 7 of the complaint, where it is alleged that the defendant "negotiated with Magdaline Adamson, and that, as a result of such negotiations, Magdaline Adamson proved up on said land, April 12, 1882." There is no allegation that this proof was made under the provision of Section 2 of the act of congress of June 15, 1880, as the court in its opinion seems to assume. And, still more fatal to the supposed case, there is no allegation that the claimant made proof under any known provisions of law, or at any office or before any officer known to the law, or that she made payment for said land, or ever received any final receipt, or evidence of a "cash entry," as the court in its opinion styles it. Indeed, there are no facts pleaded showing any title, estate or interest in Adamson, or any other person, in or to said land. Here, again, we conclude that the bare allegation that, at a certain time, she "proved up on said land," is no statement of a matter of fact, and is merely a conclusion, without the facts to support it.

And so far the court is not presented with any subject-matter upon which to found a contract of agency and a constructive trust. Again, as though fatality attended this pleading, there is found in it no averment that Adamson ever made or executed to the defendants, or either of them, any deed or other conveyance of said land, or that they, or either of them, have or claim any title, estate, or interest in or to the same. I do not overlook the supposition or assumption of the pleader, in the same paragraph, numbered 7, where it is averred that, "when the deed from Magdaline Adamson was drawn, [which is not elsewhere or otherwise alleged to have been prepared or 'drawn'] at or about the time of her proving up, * * *" the defendants, by the said John F. Norton, "* * * caused to be inserted in said deed, as guarantee, the name of J. Harry Brown;" nor do I fail to observe that it is averred, in the same connection, that "said deed was recorded shortly after its execution," in the proper office. But this is no statement of fact that any deed was executed; certainly not that a deed was executed by Adamson. It is an assumption that a deed was drawn and an averment that J. Harry Brown's name was inserted therein as grantee, and nothing more. And so an examination shows that the court has before it, in this complaint, the naked declarations that, at a certain time in 1879, one Magdaline Adamson, a stranger to this action, "made homestead entry," and later, in 1882, "proved up," upon said land; and that, "when the deed from Magdaline Adamson was drawn, at or about the time of her proving up," the defendants, in fraud, etc., "caused to be inserted in said deed, as grantee, the name" of one of the firm, which deed was "recorded."

And again we pause to inquire by what rule of pleading, or construction of a pleading, can the court hold that the case presents a subject-matter for the enforcement of a constructive trust, arising out of the relations of the parties and the circumstances of the case? Perry, Trusts, § 166, and cases cited. There is set forth in the complaint "a verbal contract," made between the plaintiff and the defendants, in the nature of a contract of agency, the particulars of which it is not necessary to

review. It is, however, distinctly averred that, by the terms of this contract, these agents were required to procure the title of the land in question for the plaintiff for the money expended in proving up the land, not to exceed $250, and their compensation of $25, making in all the sum of $275; and this, without any agreement with Adamson as to the price. There is, however, no averment or assumption that these defendants did or could by any means acquire the title for any such amount; and no allegations that Fielder ever offered, or was ready and willing, to repay or secure to them the amount expended in acquiring the land, save in the demand for judgment, where the plaintiffs offer to secure the amount advanced by the defendants, not to exceed said sum of $275. Very cheap land, regardless of what it cost or may be worth!

In closing this branch of our opinion, we desire to say that we always supposed it was the object of the Code to abolish *forms* in pleadings, not the *substance*, and to require the ultimate and material facts to be stated. And if what is stated in this complaint as a matter of fact is all that is required, under our system of pleading, to enforce a constructive trust, then the reform of the present age has led to a wide departure from the fundamental rule of good pleading, established by the wisdom of the ages, "that a pleading should enable the adverse party to know what is to proved against him, the court to know what judgment is to be pronounced according to law, and posterity to know what law is to be derived from the record."

Nothing more need be said in presenting our views of the law established by this case, if it is assumed that Mr. Justice FRANCIS is speaking for the majority of the court. We find, however, some concurring remarks by Justices CHURCH and CHURCH; and, to borrow from the language of a very respectable court, (Samuel Cupple's Wooden-ware Co. v. Jensen, 28 N. W. Rep. 193,) "it is to be regretted that the court, in giving its opinion, should have contented itself with the mere declaration of the rule which it announces," which in this case, is in substance, that, by means of the "horse-rake," a trust was created, and these respondents became thereby chargeable in this

action. To me it seems, indeed, unfortunate that, in this early period of the jurisprudence of the territory, this court "should announce" in such clear and unmistakable terms, that the disjointed, fragmentary, and unsatisfactory allegations of this complaint are a sufficient statement and pleading of ultimate facts to constitute a constructive trust, and I am constrained to believe that those of the profession who are not open enemies of every well-recognized rule of civil pleading must agree with me that, if a trust-estate is pleaded in this case, it is in law what it was in fact,—a "horse-rake" trust.

Without pausing to comment upon the great question of "public policy," which is the next proposition, I must say, in passing, that the very learned and able judge, whose language the concurring opinion is, must have entirely lost sight of the fundamental question presented in this case, viz., the sufficiency of the allegations of the complaint, or he would never have presumed to build upon so rickety a foundation the beautiful structure, "constructive trust" and "public policy," for it needs not the keen eye of the legal master-workman (and this he certainly possesses) to discover its inherent weakness. And it matters little how much these questions may be dignified by judicial discussion and citation of authorities, the fact remains that the question is presented to this court by demurrer to the complaint interposed in, and sustained by the court below, and to my mind no other alternative was left to that tribunal but to do just what was done,—sustain the demurrer.