[File No. 6622.]

EDITH M. KEEFE, Appellant, v. MICHAEL FITZGERALD, as Administrator of the Estate of John J. Fitzgerald, et al., Respondents.

(288 N. W. 213.)

Opinion filed October 24, 1939.

*Ronald N. Davies* and *S. Theodore Rex,* for appellant.
*C. F. Peterson,* for respondents.

Morris, J.   This is an action to determine the ownership of a house and lot in the city of Grand Forks.   John J. Fitzgerald died on September 17, 1938, and at the time of his death was the record title owner to the property involved in this lawsuit.   He was a widower, his parents were dead, and he had no children.   For several years prior to his death he had been keeping company with the plaintiff, Edith M. Keefe. He had a safety deposit box in a bank in Grand Forks.   His brother, Michael Fitzgerald, who is now administrator of the estate, had access to this box and kept some of his own papers therein.   Michael Fitzgerald noticed a sealed envelope in the box with the plaintiff's name written thereon.   He testifies, "Then after the—the day after the funeral when she said everything was hers, why of course then I took her up to see what was in this letter, in the envelope, so she took it and tore it open. . . ."

The contents of the envelope proved to be a warranty deed from John J. Fitzgerald to the plaintiff conveying the lot in Grand Forks.   She took the deed with her but later at the request of the county judge, turned it over to the administrator of the estate of the deceased by whom it was produced in court.   The plaintiff's mother testified that in the spring of 1933 the deceased visited at her home in Crookston, Minnesota.   That on one occasion when she came into the living room her daughter and the deceased were looking at a paper and the daughter handed it to her mother who examined it, recognized that it was

a deed from the deceased to the plaintiff, and handed it back to the daughter. The daughter, in turn, handed it back to Mr. Fitzgerald and asked him to put it away for her. This was the same instrument that was later found in the safety deposit box. In response to a question on cross-examination regarding what Fitzgerald said, the mother testified, "He told me he was going to give it to her; it was going to be hers."

It was stipulated that John J. Fitzgerald paid the taxes on the property in question in 1932 and up to and including the first instalment of the 1937 taxes; subsequent to the purported delivery of the deed, he took out three insurance policies on the property in question; he retained possession of the premises, occupied one room of the house, collected rent, and made repairs. These facts being stipulated no question of admissibility of evidence with regard thereto is before us.

There is no question as to the execution of the deed. The only question presented is whether or not the deed was delivered so as to pass title to the plaintiff prior to the death of John J. Fitzgerald.

The trial court found that there was no delivery of the deed and dismissed plaintiff's action to quiet title. The case is here for a trial de novo. A number of basic legal principles are applicable. A deed is of no effect unless it is delivered. Delivery of a deed may be by words or acts or both combined. An indispensable element to be considered in determining whether a deed has been delivered is the intention of the grantor. Arnegaard v. Arnegaard, 7 N. D. 475, 75 N. W. 797, 41 L.R.A. 258; O'Brien v. O'Brien, 19 N. D. 713, 125 N. W. 307; Magoffin v. Watros, 45 N. D. 406, 178 N. W. 134; McGuigan v. Heuer, 66 N. D. 710, 268 N. W. 679. Whether that intention is one which pertains to the manual tradition of the instrument or to the passage of title at the time of delivery is not wholly determined by the foregoing authorities. In fact, this question is one upon which there is a considerable confusion of authority. Before considering this question, however, we will determine what, if any, effect resulted from the fact that the grantee handed the deed back to the grantor with instructions to put it away for her.

The fact that the deed was immediately returned to the grantor may be considered as a circumstance bearing upon whether or not there was a delivery. But if delivery actually took place the return of the deed

to the grantor for some specific purpose such as for safe-keeping did not destroy the effect of the legal delivery. Goodman v. Goodman, 212 Cal. 730, 300 P. 449; Upton v. Merriman, 116 Minn. 358, 133 N. W. 977, Ann. Cas. 1913B 491; 16 Am. Jur. 511, Deeds; Devlin, Deeds, 3d ed. § 278a.

"So, if a deed be duly delivered in the first instance, it will operate, though the grantee suffer it to remain in the custody of the grantor. If both parties be present, and the usual formalities of execution take place, and the contract is, to all appearance consummated, without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor." 4 Kent's Commentaries, p. 455.

We now come back to the question of whether there was a legal delivery in the first instance and the effect of the intention of the grantor. The only witness who testified as to manual delivery is Mrs. Duvall. She first saw the deed when she entered the family living room. Her daughter then had it in her hand. Presumably she had received it from the grantor who was present. Whether it had been given to her as an immediate conveyance of title or only for examination with the intention that it should take effect upon the death of the grantor cannot be determined by anything that happened at that time. The statement of the grantor that "he was going to give it to her; it was going to be hers" is equally, if not more, consistent with an intention to pass title in the future than it is with an intention to pass title immediately. The evidence as to what happened at that time is so meager and indefinite that it is difficult to determine therefrom what the intention of the grantor was with respect to the passage of title. We must search the record for further evidence that might bear upon this question. We would know whether by his acts the grantor indicated that he still considered the property his. He remained in possession and continued to pay taxes upon the property. He occupied one room in the house, made repairs, collected rent, and took out three insurance policies. It is also worthy of note that Mrs. Keefe does not appear to have made any claim to this property during the grantor's lifetime. All of the grantor's acts subsequent to the purported delivery are inconsistent with a delivery with intent to immediately pass title. 16 Am. Jur. 513, Deeds, § 135; Anderson v. Overby, 46 N. D. 631, 180 N. W. 708. Consid-

ering the whole record we resolve the facts to be that the grantor manually delivered possession of the deed to the grantee with the intention that the title and right to possession of the property would not pass to her at that time but would pass to her at some future time, presumably at the grantor's death. This is in accordance with the findings of the trial court. This brings us squarely to the question of the effect of a deed intentionally delivered by the grantor to the grantee with the intention that title will not pass until the death of the grantor. In determining this question we must consider § 5497, N. D. Comp. Laws 1913, which provides: "A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which the delivery was made."

Where there is an intentional tradition to the grantee of a deed with the further intention that no title shall pass until the death of the grantor, one of two things must follow, either there is no delivery at all and no title can pass by virtue of the deed at any time, ·or the delivery is absolute and passes title in accordance witn the recitals in the deed.

Section 5497 was first enacted in this state in 1877. It appears to have had its origin in § 403 of the draft of the Field code prepared for the state of New York. The annotations of the commission that prepared the Field code contain a reference to Worrall v. Munn, 5 N. Y. 229, 55 Am. Dec. 330. In that case it was held that a delivery of a deed in escrow cannot be made to the grantee and that if such delivery is in fact made, it becomes, in law, an absolute delivery. In Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576, which involves the question of the delivery of a mortgage deed, it is said: "The case shows a delivery of the mortgage, accompanied by oral conditions; and, both under the common law and under our statute such oral conditions were extinguished by the delivery, and the delivery became absolute. Section 3517, Rev. Codes 1899 (§ 5497, supra) provides that 'a grant cannot be delivered to the grantee conditionally. Delivery to him or his agent as such is necessarily absolute; and the instrument takes effect thereupon discharged of any condition on which the delivery was made.' This section was formulated by the Field code commission, and em-

braces the doctrine laid down in Worrall v. Munn, 5 N. Y. 229, 55 Am. Dec. 330, and Braman v. Bingham, 26 N. Y. 483."

After discussing other cases and the contentions of the parties, the court concludes its opinion by saying: "The legislature of this state deemed it wise to withhold the right to rely upon such conditions where the instrument which would be defeated relates to real estate and there had been a delivery in fact."

In the syllabus of Ueland v. More Bros. 22 N. D. 283, 133 N. W. 543, it is held: "Under § 4954, Rev. Codes 1905, following holding in Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576, the manual delivery of the deed to the owners' grantees being admitted, the intent of the parties that a condition precedent to its operation shall exist is abrogated by the statute, and such a delivery is absolute, and conveys title to the grantees, to whom the same was by the grantor delivered."

The provisions of our statute are identical with those of California from which ours were undoubtedly taken. The case of Mowry v. Heney, 86 Cal. 471, 25 P. 17, decided in 1890, was an action to quiet title brought by the grantee of a deed against a subsequent purchaser at an execution sale who was the judgment creditor of the grantor. Among other things, the court found that the grantor who was dangerously ill and in apprehension of immediate death, desired to make a disposition of her estate at her death. She executed the deed in question and delivered it to the grantee who was her daughter, with the intent that it would be operative in event of her death from said illness, and that the deed should be inoperative and of no effect in event of her recovery, and that the daughter knew of her mother's intention. In summarizing the findings of the lower court, and commenting thereon, the supreme court of California says: "It finds an intention on the part of the grantor that the deed should not take effect, except in case of her death, and that the plaintiff knew of such intention. . . . Its legal effect was to vest in the plaintiff the title to the property, free from any conditions. The effect of the finding, if upheld, is to vary the terms of the deed, and render it one upon condition, and defeat its operation by parol proof of an intention on the part of the grantor that it should have an effect different from that apparent on its face. This cannot be done."

The California court quotes extensively from §§ 284 and 314 of Devlin, on Deeds, wherein numerous authorities are cited.

In McGuigan v. Heuer, 66 N. D. 710, 268 N. W. 679, it was claimed by the administrator of the deceased grantor that certain deeds to the wife and sons of the grantor were not delivered; that the grantor did not intend to pass title until after his death, and that the inference from the testimony was that he took that means of disposing of his real estate in order to avoid probate proceedings. In disposing of these contentions, we said: "The deeds were delivered to the wife and she was the grantee in one of the deeds. A grant cannot be delivered to the grantee conditionally, and so far as that deed is concerned the delivery was absolute. Comp. Laws, § 5497. The record also shows that the delivery of the deeds to the boys was made to the mother for the boys and she therefore was the agent of the boys to that extent, and delivery to her as their agent is an absolute delivery. Comp. Laws, § 5497."

If the grantor makes a manual delivery to the grantee of a deed absolute in form, intending to part with all authority and dominion over the instrument, he makes an absolute delivery and title passes immediately in accordance with the terms of the deed notwithstanding any intention or understanding that its operation be delayed until the happening of a contingency. An exception is, of course, made by statute with regard to deeds which are in fact mortgages. Comp. Laws, § 6729. In the case before us the instrument was intentionally delivered to the grantee. It was absolute on its face and therefore immediately conveyed absolute title.

Reversed.

NUESSLE, Ch. J., and BURR, CHRISTIANSON, and BURKE, JJ., concur.