STARK COUNTY, North Dakota, a Municipal Corporation, Plaintiff and Appellant,

v.

Andrew KOCH, Defendant and Respondent.

No. 7937.

Supreme Court of North Dakota.

Feb. 23, 1961.

George T. Dynes, Dickinson, for plaintiff and appellant.

T. F. Murtha, Dickinson, for defendant and respondent.

MORRIS, Judge.

This is an action to have an instrument denominated a "trust mortgage" declared a mortgage and foreclosed. By that instrument Katharina Koch purported to sell and convey to the County of Stark, State of North Dakota, a quarter section of land located in Stark County "in trust for the purposes and subject to the conditions set forth in Section 22 of Chapter 211 of the 1937 Session Laws of North Dakota." It was also provided that the trust mortgage constituted a lien to secure all moneys advanced as old age assistance, with interest thereon at three per cent per annum. It is dated August 20, 1941, and was recorded on the same day.

The sole defendant in the action is Andrew Koch, the son of Katharina Koch, who by answer alleges that he is the owner of the land described in the trust mortgage by virtue of a deed given to him by Katharina Koch on March 5, 1940, that he occupied the land and was in possession thereof at the time the trust mortgage was given, and has remained continuously in possession thereafter.

It appears that Denis Koch obtained title to the land in question as a homestead from the United States Government about 1908. On January 30, 1934 Denis Koch and Katharina Koch, his wife, executed a deed to the land in question purporting to convey it to his wife, Katharina Koch. On the same day the grantors acknowledged the deed before notary public Joseph P. Ziegler. This deed was recorded in the office of the register of deeds of Stark County February 1, 1946. The record bears the notation "instrument returned to M. L. McBride, city, Feb. 1946." Denis Koch died in 1934, some time after this deed was executed. Denis and Katharina Koch had eight children. When Denis died only the son Andrew remained on the farm, where he lived with his wife and family. He had helped with work on the farm since he was ten years of age. He and his family remained with his mother and continued to help operate the farm after the father's death. By 1940 the mother's health began to fail and the three-room house on the farm became crowded due to Andrew's family increase. The mother then moved into the city of Dickinson, where she made her home with a daughter, although she would sometimes go out to the farm and stay two or three weeks. She lived with the daughter in Dickinson until 1945 when she went to an old folks home where she died in 1950. Andrew remained on the farm with his family until 1945 when he obtained additional land and moved his residence to another farm. However, he still remained in possession of the home farm. The mother applied for and obtained public aid from the Welfare Board, which resulted in her execution of the trust mortgage above set forth.

On March 5, 1940 Katharina Koch executed a warranty deed purporting to convey the land in question to Andrew Koch. The deed was acknowledged on the same day before Joseph P. Ziegler and witnessed by him and Andrew Fischer. This deed was recorded in the office of the register of deeds on February 1, 1946. The record bears the notation "instrument returned to M. L. McBride, city, Feb. 4, 1946." The delivery of this deed is the prime question in the controversy. The grantee, Andrew Koch, was not present when the deed was executed. He never asked anyone to record it. He does not know how the deed came into the possession of M. L. McBride, who apparently caused it to be recorded and to whom the deed was returned after recording. Andrew stated that he did not know whether anyone went with his mother when the deed was prepared by Joe Ziegler, although he testified, without objection, to the conclusion that she made it out and left it with Joe. He also testified that his

mother told him in March 1940, after she had been in Ziegler's office, that she was giving the property to him. He said that Ziegler told him about the deed in 1940. He did not remember much about the conversation other than that Ziegler told him that Ziegler had a deed. No one ever told him when he could get it.

Ziegler testified that he remembered execution of the deed from Denis Koch to Katharina Koch, and the deed from Katharina Koch to Andrew Koch, but did not remember the details surrounding the transactions. He does not remember what was done with the deed to Andrew after it was executed, or whether he had either deed in his safe. Neither does he remember delivering the deeds to McBride.

There was admitted into evidence, without objection, a memorandum of the county auditor stating that taxes for the years 1940 through 1945 were paid by M. L. McBride February 1, 1946, and that taxes for the years 1946 through 1958 inclusive were paid by Andrew Koch or by the Mandan Production Credit Association for Andrew Koch.

After 1940 Andrew Koch retained all of the crops and income from the farm. He paid no rent and made no division of the proceeds with anyone. The house was small, and although the land was not fertile, Andrew was. His family was increasing. It reached a total of 16 children. This situation necessitated obtaining larger quarters and more farm acreage, with the result that he moved to another place in 1945 but continued to possess and pay taxes on the home farm.

The trial court questioned Andrew Koch as follows:

"Q. Mr. Koch, when your mother made out this deed to you in March, 1940, did she turn it over to you? A. Yes.

"Q. And, then you gave it to Mr. Ziegler to keep for you? A. Yes.

"Q. Did you pay anything for this? A. No.

"Q. How did you happen to get a deed for the land then? A. Well, just told me she gave it to me.

"Q. For what? A. Well, I—because we took care of her up until 1940. * * *

"Q. When your mother was living, was her place of residence here in Dickinson? A. Yes.

"Q. After August, 1941? A. Yes.

"Q. Her home wouldn't be on the homestead? A. No.

"Q. When did your mother move off the homestead? A. 1939."

Andrew's testimony is conflicting. He also testified that he never saw the deed and that the reason the deed was not recorded was the unpaid taxes.

It is apparent from this record that in 1940 and thereafter Andrew Koch treated the farm as his own. In 1940 he told one of the neighbors that he owned the farm. He testified that in 1942 or 1943 he told an official of the County Welfare Office that he owned the farm and that he had a deed to it. This testimony was not controverted.

At no time does it appear that until foreclosure proceedings were commenced the County or its Welfare Office questioned Andrew's right to the farm or demanded any of the proceeds thereof, either before or after the death of Katharina Koch, which took place in 1950. This action was started in September 1959 and was preceded by a notice before foreclosure mailed to the defendant on August 5, 1959 wherein the sum of $6,533.44 was claimed due for old age assistance furnished to Katharina Koch and interest thereon.

The trial court made findings in favor of the defendant to the effect that the deed from Katharina Koch to Andrew Koch was delivered and conveyed the premises to him

and that the deed takes precedence over the trust mortgage which was subsequently executed by Katharina Koch. The court directed entry of judgment decreeing the defendant to be the owner in fee simple of the real estate involved and that the plaintiff, Stark County, had no right, title or interest therein and was not an innocent purchaser or lienholder for value without notice of the rights of the defendant. From this judgment the County appealed.

The County contends that the defendant has failed to sustain the burden of proof with respect to showing delivery of the deed to him, and that if in fact the deed was delivered and conveyed title as between the grantor and grantee, the County was an innocent purchaser or encumbrancer for value and that its trust mortgage, taken and recorded prior to the recording of defendant's deed, is entitled to priority and became a first lien upon the land. There is no question as to the execution of the deed. The question is whether or not the deed was delivered so as to pass title to the defendant, Andrew Koch. A deed is, of course, of no effect unless it is delivered. Delivery may be accomplished by words or acts, or both combined. It may be accomplished by placing the deed in the possession of the grantee, as by manual tradition, or it may be accomplished by constructive delivery.

"Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: 1. When, by the agreement of the parties, the instrument is understood to be delivered at the time of execution and the circumstances are such that the grantee is entitled to immediate delivery; or 2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed." Section 47–09–09 NDCC.

While a grantee has the burden of proving a constructive delivery, Black v. Black, 58 N.D. 501, 226 N.W. 485, 65 A.L. R. 852, nevertheless, an indispensable element to be considered in determining whether the deed has been delivered is the intention of the grantor. Keefe v. Fitzgerald, 69 N.D. 481, 288 N.W. 213. The intention of the grantor is mainly a question of fact. McGuigan v. Heuer, 66 N.D. 710, 268 N.W. 679; Magoffin v. Watros, 45 N.D. 406, 178 N.W. 134.

The chief factors militating against delivery urged by the County are the absence of proof of positive instructions to a third party to deliver the deed to the grantee or to have it recorded for him and the conduct of Katharina Koch in executing the trust mortgage to the County. It is further pointed out in connection with her conduct that she was petitioner in proceedings in county court which, on September 12, 1941, culminated in a decree of summary distribution in the matter of the estate of Denis Koch purporting to decree to and vest in Katharina Koch the land in question.

As opposed to these contentions it appears that the defendant and his family lived on the land with his mother, cultivated the farm and cared for her for many years. At about the time the deed was executed she moved to the nearby city of Dickinson and took up residence with her daughter. Friendly relations continued with her son with whom she visited from time to time on the farm. She had other children, all of whom had left the farm some years before. There does not appear to be any intention or instruction that the deed was to be held until after her death before being delivered. The son remained on the farm and retained all the proceeds therefrom. He had full possession of the property. When the deed was finally recorded in 1946 it does not appear that she questioned it, although she did not die until 1950. The County did not challenge it until foreclosure proceedings were begun in the latter part of 1959.

The trial court, who heard the witnesses and first evaluated their testimony,

found that the deed was delivered. In such case the findings of the court are entitled to appreciable weight. See Pauly v. Haas, N.D., 84 N.W.2d 302, and numerous cases therein cited.

■ Both deeds were recorded by M. L. McBride, an attorney at law practicing in Dickinson. He has since died. The record does not show from whom he obtained possession of the deeds nor why or by what authority he paid taxes that were necessary to be paid in order to permit the deeds to be placed of record. While delivery cannot be presumed from recording under such circumstances, on the other hand no inference arises that the deeds were improperly placed of record. It is presumed that private transactions have been fair and regular and that the law has been obeyed. Section 31–11–03, paragraphs 19 and 32, NDCC; Hendrickson v. Syverson, N.D., 82 N.W.2d 827.

■ While the record in this case is somewhat unsatisfactory, when we consider all of the evidence and the findings of the court with respect thereto we agree with the trial court's conclusions with reference to delivery.

■ Having reached the determination that there was a delivery of the warranty deed from Katharina Koch to Andrew Koch at or shortly after the time of its execution, which transferred title to him, the next question is whether that title is affected by the decree of summary distribution entered in the County Court of Stark County in September 1941. We have concluded that his title was not affected thereby. Any interest which the decree purported to convey to Katharina Koch passed to the grantee of the warranty deed under Section 47–10–15 NDCC, which provides:

"Where a person purports by proper instrument to grant real property in fee simple and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors."

■ The final contention of the County that merits consideration is the assertion that by virtue of the trust mortgage the County became a purchaser or encumbrancer in good faith and for value without notice of the unrecorded deed to Andrew Koch. This contention ignores the fact that Andrew Koch and his family at the time the instrument was executed were in possession of and occupied the land in question. Andrew lived on it, farmed it, and retained the proceeds from it. His name was on the mailbox of the rural mail route. His mother had already taken up her residence in Dickinson. These facts, if not actually known to the officials of the County and its Welfare Board, could have been readily ascertained. The facts in this case bring it within the rule that open and notorious possession and occupancy of real property by another than his grantor is sufficient to charge a purchaser thereof with knowledge of the rights of the occupants. This case does not fall within any of the exceptions to that rule. Earnest v. First National Bank, 56 N.D. 309, 217 N.W. 169.

We agree with the trial court's determinations of fact and application of the law thereto. The judgment appealed from is affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ.