Alma M. PARCELUK, Plaintiff and Appellant,

v.

Millie S. KNUDTSON, James O. Knudtson, Florence V. Barnhart, Carl A. Knudtson Robert K. Knudtson, Margaret M. Haag (formerly Margaret M. Knudtson), and Hunt Petroleum Corporation, Defendants and Respondents.

No. 8162.

Supreme Court of North Dakota.

Jan. 7, 1966.

Rehearing Denied Feb. 14, 1966.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiff and appellant.

Reichert & Howe, Dickinson, for defendants and respondents Millie S. Knudtson, James O. Knudtson, Florence V. Barnhart, Carl A. Knudtson, Robert K. Knudtson, and Margaret M. Haag.

Shank, Irwin & Apeland, Dallas, Tex., for defendant and respondent Hunt Petroleum Corporation.

STRUTZ, Judge.

Charley S. Knudtson died intestate on July 10, 1947. He was survived by his widow, Millie S. Knudtson, and by six

children, three sons and three daughters, the youngest being a son nineteen years of age. One of the daughters, Alma M. Parceluk, is the plaintiff and appellant in this action. The other children, together with the widow, Millie S. Knudtson, are made defendants. Hunt Petroleum Corporation, holder of an oil lease on the property involved in the suit, also is made a defendant. The validity of the oil lease is not challenged by the plaintiff, however.

Probate of the estate of Charley S. Knudtson was begun in county court of Billings County in October of 1947. Each of the heirs signed an appearance and waiver of service of citation and notice, which waiver provided, among other things:

"I do hereby also consent that said estate be administered and final decree of distribution entered therein without the service of any further notice or citation on me."

One of the sons, James O. Knudtson, was appointed administrator of the estate. The inventory listed certain real estate as follows:

1. North Half of South Half (N½ S½) of Section 32, 144, 98

2. South Half of South Half (S½ S½) of Section 32, 144, 98

3. Northwest Quarter (NW¼) and Northeast Quarter (NE¼) of Section 32, 144, 98

4. All of Section 31, 144, 98

5. All of Section 19, 144, 98

This real estate was appraised at $8,160. This valuation included the homestead which was appraised at $2,400.

Final decree of distribution was entered on July 12, 1948. This decreed to the widow, Millie S. Knudtson, the entire title to the homestead, described as the North Half of the South Half (N½S½) of Section 32, Township 144, Range 98, and further decreed to her a one-third interest in the remainder of the real estate. Each of the children was decreed a one-ninth interest in the real estate, except the homestead. Such final decree of distribution also decreed to the widow a one-third interest in the personal property and a one-ninth interest in such personal property to each of the children. The appraised value of the personal property was $12,396.70.

The plaintiff brings this action to quiet title to her one-ninth interest in all the real estate described in the final decree, including the homestead. She also demands partition of the real estate and an accounting from her mother, Millie S. Knudtson, and her brothers James and Robert for her share of the rents and profits accruing from her one-ninth interest in the land. The defendants contend that, subsequent to the closing of the estate, they and the plaintiff orally agreed that the mother should remain in possession of the property of the estate and that she should retain the rents and profits therefrom during her lifetime. It was further agreed that the mother should pay taxes and maintain the premises during her possession. She has been in possession and has carried out this agreement without any objection from the plaintiff until the commencement of this action.

It is further contended by the defendants that, on or about July 7, 1949, the plaintiff was in need of money and that she sold her one-ninth interest in the estate, both real and personal, to her mother and her three brothers; and that, although the sale was made orally, the full purchase price agreed upon was paid to the plaintiff and the purchasers have remained in possession since that time with no demand being made by the plaintiff for possession or for rents and profits until the commencement of this action in July of 1962, thirteen years after such sale was made. It is further contended by the defendants that, relying on such oral sale, the purchasers have made valuable and permanent improvements upon the real estate.

The plaintiff, on the other hand, asserts that she sold only her one-ninth interest in the personal property of the estate and that she did not sell any part of her interest in the real estate. She contends that any purported sale of the real property, being based on an oral agreement, is in violation of the statute of frauds since such agreement was not in writing as required by Section 9–06–04, North Dakota Century Code. She further contends that such purported oral agreement would be in violation of Section 47–10–01 of the North Dakota Century Code which provides for the methods of transferring an estate in real property.

The record also shows that, on May 21, 1948, the plaintiff signed a receipt for her share of the property in the estate and consented that the administrator be discharged.

It is conceded by the parties that, after the estate had been closed, the plaintiff sold at least a portion of her interest in the estate. According to her testimony, she sold only her interest in the personal property. All of the parties agree that she did sell her interest in the personal property, but there is a direct conflict in the evidence as to whether the sale and purchase included the plaintiff's interest in the real estate. The testimony of the defendants is that she sold her entire interest in the estate, including her interest in the real estate. The defendants point out that the amount of the purchase price was arrived at by taking the market value of the cattle and appraising the value of the real estate at six dollars an acre, and that she then was offered one-ninth of such amount for her entire interest in the estate and that she accepted the offer. The defendants further testified that the plaintiff agreed to have a deed made out, executed, and mailed to her brother James who had been the administrator of the estate. No written memorandum was made of this agreement, however, and when the plaintiff was asked to give the deed later, she refused to do so. James testified that, approximately six months to a year after the plaintiff had sold her interest in the estate, he asked her for a deed and that she stated that she didn't think she wanted to give the deed yet. Subsequently, she again was asked for the deed, and at that time she stated that she didn't think she had sold her interest in the real property.

The mother and her three sons continued to occupy and operate the farm until 1952, when one of the boys moved away. Thereafter, another moved, leaving the mother and the youngest son on the farm. Both of the boys who left the farm, however, retained their interest in it. At the time of the trial, the mother and the youngest son were farming and operating the land. The evidence shows that another daughter had sold her entire interest in the estate, including her interest in the real estate, for approximately the same sum as was paid the plaintiff in this action.

There is no doubt that the defendants intended to buy all of the plaintiff's interest in the father's estate, including her interest in the land. The widow testified that when the plaintiff came to the farm and wanted money, she suggested to the boys that they figure up the value of her interest in the estate and pay her off.

"A. * * * I said why don't you figure up her estate and lets [sic] pay her off.

"Q. You said her estate?

"A. Yeah.

"Q. And you meant her interest in your husband's estate?

"A. That's right."

The plaintiff's testimony, of course, is in direct conflict with that of the defendants with respect to the sale of her interest in the estate. She testified that she went to the home to get her brothers' advice as to what would be a fair price for her cattle. She testified as to what took place as follows:

"Q. What did they say to you about the estate?

"A. Well, they come with a flat figure and expected me to accept it.

"Q. Did they tell you what your interest in the estate was?

"A. No, they did not.

"Q. How did you come to accept this figure and what were you accepting then?

"A. I was accepting it for personal property.

"Q. Did they tell you that under the final decree you were entitled to an interest in the personal property?

"A. There was no word said about the final decree.

"Q. Was there anything said about the land?

"A. No.

"Q. Did anyone mention how many cattle you would have an interest in or how many you would own outright if they were divided up?

"A. They said about nine head.

"Q. Did they mention to you that there was—that you also had an interest in the farm machinery and equipment?

"A. No, just interest in it, but no particular share of it.

"Q. Did they say anything about an interest in the land?

"A. No.

"Q. Was anything said about delivery of a deed?

"A. No.

"Q. Was anything said about a bill of sale?

"A. No.

"Q. All right, they did however draw some checks to you, is that correct?

"A. That's correct.

"Q. How much were the checks they gave you?

"A. $2345.

"Q. $2345. Then did you leave or was there some further conversation?

"A. No, I think I left shortly after."

She further testified that she next talked with her brother about the transaction some three years after it had taken place. At that time, her brother wanted her to give a deed. She states that that was the first time she knew they wanted a deed to the land. She testified definitely, however, that at the time of the sale and purchase she thought she was selling personal property.

The question to be determined on this appeal is what interest, if any, the plaintiff still has in the real estate which was a part of the estate of her deceased father. She makes no claim to an interest in the personal property.

■ Included in the inventory of the estate and included in the assets distributed by the final decree of distribution was the homestead, described as the North Half of the Southeast Quarter (N½SE¼) and the North Half of the Southwest Quarter (N½SW¼). It also included the Northwest Quarter (NW¼) of Section 32, Township 144 North, Range 98. The evidence shows, however, that on October 6, 1931, almost sixteen years before his death, the intestate executed a warranty deed to this property to his wife, the defendant Millie S. Knudtson. The plaintiff contends that this deed was invalid because there was no delivery to the grantee. The evidence shows, however, that this contention of the plaintiff is without merit. The undisputed testimony of the eldest son, James, clearly shows that there had been a valid delivery of the deed. He testified as follows:

"Q. Did he hold on to it [the deed] or did he hand it to her?

"A. She took it and looked at it. * * *

*    *    *    *    *    *

"Q. Well, did he just quickly hand it to her and she hand it back to him and he take it to the bank?

"A. He handed it to her and she said, 'I suppose put it in with the rest of them,' and handed it back."

James further testified that, some time after the deed was drawn and delivered to his mother, his father showed him the deed. He testified:

"A. He took it out of the box and showed it to me. He said, 'This is mother's deed for that * * * land.'"

■ This deed is in existence. It was received in evidence and was recorded prior to the time of trial. The undisputed evidence shows that there was a valid delivery of the deed. And the fact that after such valid delivery the grantee handed it back to the grantor for safekeeping does not destroy the effect or the validity of the delivery of the deed. This court, in the case of Keefe v. Fitzgerald, 69 N.D. 481, 288 N.W. 213, held that if a deed has been executed and there has been a valid delivery to the grantee, its return to the grantor for some specific purpose such as for safekeeping does not destroy the effect of delivery.

■ Since the undisputed evidence shows that there was a valid delivery of the deed to the homestead and the additional quarter described in the deed, the fact that the land conveyed by the deed later was included in the probate of the grantor's estate does not affect the previous transfer. See Stark County v. Koch (N.D.), 107 N.W.2d 701.

The plaintiff therefore has no interest in the homestead or in the Northwest Quarter (NW¼) of Section 32, 144, 98. That land had been transferred by the valid delivery of a warranty deed by Charley S. Knudtson to Millie S. Knudtson, and the finding of the trial court denying the plaintiff any interest in such land is affirmed.

We now will consider the plaintiff's claim to an interest in the remaining land described in the final decree, to wit, the South Half of the South Half (S½S½) of Section 32, the Northeast Quarter (NE¼) of Section 32, all of Section 31, and all of Section 19, 144, 98. The trial court found that she had no interest in this property because she had sold all of her interest to the defendants Millie, James, Carl, and Robert, and that she had been paid in full for such interest. The court pointed out that she signed a receipt for her share "in the property and the estate of decedent." The court further noted that she was paid the total sum of $2,529.19 for such interest; that her interest in the appraised value of the estate including the land was $2,413; that such appraisal included the value of the land which was the sole property of Millie S. Knudtson and which should not have been included in the estate. The court found that, although such sale was made by oral contract, the purchase price was paid to her; that the purchasers have been in possession since that date with no demand being made by the plaintiff for possession or for rentals until the commencement of this action; and that the purchasers, in reliance upon the sale, did make improvements upon the real estate. On such findings, the court ordered judgment in favor of the defendants.

The plaintiff contends that the purported sale of her interest in real estate cannot be sustained because it is based on an alleged oral contract and is in violation of the statute of frauds. Sec. 9–06–04, N.D.C.C. She also contends that such purported oral agreement would be in violation of Section 47–10–01, North Dakota Century Code, which provides that an estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing subscribed by the party disposing of the same or by his agent who is authorized in writing.

Courts of various jurisdictions have held, however, that part-performance of an oral contract for sale of land takes the contract out of the operation of the statute of frauds. In this State, our law specifically provides that contracts for the sale of real property or an interest therein are invalid unless such contract or some note or memorandum thereof is·in writing and subscribed by the party to be charged. Sec. 9–06–04, Subsec. 4, N.D.C.C.

Section 47–10–01 of the North Dakota Century Code, referred to above, besides providing that an estate in real property other than an estate at will or for a term not exceeding one year can be transferred only as set out, further provides:

"* * * This does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

■ This court, from early days, has held that an oral contract for the sale of land cannot be avoided in equity on the ground that such agreement is not in writing, and therefore is within the statute of frauds, when the agreement has been partially performed and such part-performance would work a fraud on the one who purchased the land, which contract the oral seller now refuses to carry out. Fideler v. Norton, 4 Dak. 258, 30 N.W. 128, 32 N.W. 57.

As recently as October 1962, this court held that partial performance of an oral agreement to convey an interest in real property is sufficient to take the agreement out of the statute of frauds. Brandhagen v. Burt (N.D.), 117 N.W.2d 696, 700.

This seems to be the rule adopted in many jurisdictions. See Williston on Contracts, 3d Ed., Vol. 3, Sec. 494, p. 560.

Thus, whenever acts have been done which are of such a nature as to be consistent only with the existence of a contract for the sale of real property, the case is held to be taken out of the statute of frauds. The only question in the case of partial performance is the sufficiency of proof of what the agreement really was.

In the case before us, the question is whether there was an agreement by the plaintiff to sell her interest in the real property, and, if there was, whether there was sufficient partial performance to take the agreement out of the statute of frauds, since no part of such agreement was in writing. There is considerable evidence on the part of several defendants that plaintiff agreed to sell her entire interest in the estate. She, however, denies selling any interest in the land, and contends that only her interest in the personal property was disposed of. She admits receiving $2,345 in payment for whatever she did sell; the trial·court found that she was paid $2,-529.19; and the record further shows that another sister sold her entire interest in the estate, including her interest in the real estate, for approximately this same amount.

■ But mere payment of money consideration by the buyer generally is not sufficient justification for enforcing an oral contract to convey land. Baker v. Heavrin, 148 Neb. 766, 29 N.W.2d 375; Boekelheide v. Snyder, 71 S.D. 470, 26 N.W.2d 74.

While this court has not passed on the effect of alleged full payment of the purchase price, we have held that partial payment is not, of itself, sufficient part-performance to take a contract out of the statute of frauds. Fried v. Lonski, 48 N.D. 1023, 188 N.W. 582; Brey v. Tvedt, 74 N.D. 192, 21 N.W.2d 49; Henry S. Grinde Corp. v. Klindworth, 77 N.D. 597, 44 N.W.2d 417.

However, when considered in connection with other facts, such payment is entitled to weight. Andrews v. Charon, 289 Mass. 1, 193 N.E. 737; Hatch v. Wolack, 316 Mich. 258, 25 N.W.2d 191.

■ The acts relied upon for partial performance, in order to be sufficient to relieve an oral agreement from the effect of

the statute of frauds, must be of such a nature as to be incomprehensible and not capable of being understood unless related to the contract to convey an interest in land, and payment of money is not enough unless followed by other acts such as. possession or the making of valuable improvements.

The defendants, in order to show partial performance of an oral contract to sell the plaintiff's interest in the real estate, must show not only the terms of such agreement—which we believe they have shown in this case—but they must also show such acts on the part of the defendants which would permit the court to find that the partial performance was substantial and that such partial performance on the part of the defendants put them in such a situation that nonperformance of the oral agreement by the plaintiff would amount to fraud upon the defendants. In other words, it must appear that the acts relied upon by the defendants have been done solely with a view to performing the oral contract which they allege plaintiff had made to sell her interest in the real estate.

We have examined the record and we find no such acts of partial performance by the defendants. The partial performance relied upon by them, in addition to payment, is the digging of a dugout to hold water on Section 31 for livestock pastured on that property, which dugout was made at a cost of approximately $400. The defendants further allege that they dug a well and constructed some corrals on another tract of land, also for the use of livestock, at a cost of approximately $1,500. While these improvements are substantial, they are consistent with the use of the land for ranching purposes by the defendants. The defendants also contend that they did some painting and repairing of the buildings on the home place, but that is not a part of the oral agreement on the part of the plaintiff to sell, since we hold the home place was the property of the defendant Millie S. Knudtson under a deed delivered to her by

Charley S. Knudtson some years before his death, and that such property should not have been included in the property of his estate. The digging of the water hole and the well and the building of the corrals cannot be held to be such acts of partial performance induced by the oral contract and done with a view to completing the oral contract since they cannot be said to have been done with a view to performing such oral contract. It would be just as consistent to hold that these acts were performed in the operation of the ranch in which all of the defendants had an interest and which ranch was, in fact, owned by the defendants. except for the one-ninth interest owned by the plaintiff.

In this case, the trial court found that there was, in addition to the payment of the purchase price, other partial performance of the oral agreement. The trial court points out that the purchasers have been in possession for years, with no demand on the part of the plaintiff for possession or for rentals until the commencement of this suit. But that fact, while ordinarily important in determining whether there has been sufficient partial performance to take an oral agreement out of the statute of frauds, loses most of its weight in this case when we remember that the defendants were in possession because the defendant Millie S. Knudtson owned the entire title to two quarters of the land and the other defendants, together with the said Millie, were the owners of eight-ninths of the title to the remaining real estate. Thus her possession and the making of the improvements upon the premises, which the defendants' testimony shows were made, would be consistent with the operation of the ranch under the eight-ninths ownership of the defendants.

In examining the record,. we find some evidence which would tend to corroborate plaintiff's contention that she had not sold her interest in the real estate. The evidence shows that, until shortly before the commencement of her action, she was. paid her

portion of Government benefit payments and that no objection to this was made by any of the defendants. If defendants were owners of all of the title, why would they have consented to such payments? We have carefully examined the entire record and, while there is much evidence to sustain the defendants' contention that plaintiff sold her interest in the real estate, we do not find that there is competent evidence of partial performance sufficient to take the transaction out of the statute of frauds. The possession of the defendants as alleged purchasers and the making of valuable improvements relied upon by such purchasers as part-performance are consistent with their interests in such property, even though the plaintiff owns one-ninth thereof. We find that there has been no showing of partial performance in this case sufficient to take the oral agreement for the sale of the interest of the plaintiff in the real estate out of the statute of frauds.

The plaintiff has also demanded an accounting for rents and profits and for a partition of the real estate. Clearly, the plaintiff is not entitled to rents and profits. The plaintiff, if she did not legally sell her interest in the real estate—as she contends —was, at best, a tenant in common with the defendants. Sec. 47–02–08, N.D.C.C. The defendants, as tenants in common, occupied more than their proportionate shares of the common premises. They did not agree to pay for such use. Since the plaintiff, as a tenant in common, made no demand upon the defendants until the time of her suit, she cannot now claim that she was ousted or excluded from the premises. As a general rule, a tenant in common who occupies more than his proportionate share of the common property and who has not agreed to pay therefor, and who has not ousted his cotenant, is not liable to such cotenant for rent or for use and occupancy, although he may be liable if there is an express or implied agreement to pay rent. 86 C.J.S. Tenants in Common § 46, p. 407. Here, no express or implied agreement to pay rent was shown by the plaintiff.

The preponderance of the evidence in this case establishes an agreement between the parties under which the mother, defendant Millie S. Knudtson, was to remain in possession for her lifetime and have the rents and profits from all the land in return for paying taxes and maintaining the premises. This agreement was not in writing. However, the agreement did create a tenancy at will. A tenancy at will confers the right to possession of the premises for such an indefinite time as both parties shall determine that possession shall continue. The plaintiff has now determined that the possession of the defendants of her one-ninth interest in the estate shall terminate. We believe, therefore, that her petition for partition of the property in which she has interest should have been granted.

The case is therefore remanded to the district court for a partition of the South Half of the South Half (S½S½) of Section 32; all of Section 31; and all of Section 19; all in Township 144, Range 98.

For reasons stated herein, the judgment of the trial court decreeing that the plaintiff has no interest in the North Half of the South Half (N½S½) of Section 32, 144, 98 and in the Northwest Quarter (NW¼) of Section 32, 144, 98 is affirmed.

The judgment of the trial court is reversed as to the plaintiff's interest in the balance of the real estate, and she is found to have an undivided one-ninth interest in the South Half of the South Half (S½S½) of Section 32 and a one-ninth interest in all of Section 31 and all of Section 19, all in Township 144, Range 98. Title in the plaintiff is hereby quieted to her one-ninth interest in such land as against the defendants named.

That portion of the district court's judgment denying the plaintiff's demand for an accounting for rents and profits is modified and such an accounting is ordered from and after the date of the

service of plaintiff's summons and complaint upon the defendants. From the time of service of such summons and complaint and the filing of defendants' answer, the plaintiff, as cotenant, was clearly ousted from the common property. Her summons and complaint constituted a demand on the defendants, her cotenants, for her portion of rents and profits. She is entitled to an accounting from that date.

The portion of the trial court's judgment denying plaintiff's petition for a partition of the real estate is modified, and the case is remanded to the trial court with instructions that the plaintiff's one-ninth interest in the estate, as determined herein, be partitioned as provided by law.

ERICKSTAD and TEIGEN, JJ., concur.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.

On Petition for Rehearing.

STRUTZ, Judge.

The plaintiff has filed a petition for rehearing in which she contends that the decision of the court is in error in finding that there was a delivery of the deed executed by Charlie S. Knudtson to his wife. The trial court found a valid delivery and based such finding on the testimony of the son, James, which testimony was undisputed. James testified that his father gave the deed of his mother and asked her if she wanted it put in the safety-deposit box with the rest of the papers. He was then asked:

"Q. Well, did he just quickly hand it to her and she hand it back to him and he take it to the bank?

"A. He handed it to her and she said, 'I suppose put it in with the rest of them,' and handed it back."

The plaintiff raises no question as to the execution of the deed. The sole question raised is whether there was a valid delivery. The trial court found that there was such delivery, and we believe the record sustains such finding. This court also, on trial de novo, found that there was a valid delivery.

As this court has said many times, on a trial de novo the findings of the trial court are entitled to appreciable weight, especially when based on testimony of witnesses who appeared in person before the court. Pauly v. Haas (N.D.), 84 N.W.2d 302.

This statement was made many times by this court prior to the *Pauly* case, and has been repeated in many subsequent decisions. The witnesses testified before the trial court. Their credibility and the inferences to be drawn from their testimony is of great importance, and the finding of the trial court of a valid delivery is entitled to appreciable weight on appeal to this court.

The petition for rehearing is denied.

ERICKSTAD and TEIGEN, JJ., concur.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.