Roger J. ANDERSON, Plaintiff
and Appellant,

v.

Walter MOONEY and Margaret Mooney,
Defendants and Appellees.

Civ. No. 9546.

Supreme Court of North Dakota.

May 22, 1979.

Harold A. Dronen, of Johnson & Maxwell, Fargo, for plaintiff and appellant.

Dewel E. Viker, Jr., of Viker & Juelson, Hillsboro, for defendants and appellees.

VANDE WALLE, Justice.

Roger J. Anderson appeals from the district court's judgment denying his claim against Walter and Margaret Mooney ("Mooneys") for specific performance of an oral agreement to sell property. The judgment required Anderson to pay to the Mooneys $2,250 in rent for the years 1975 through 1977 and ordered the Mooneys to return to Anderson $6,500 that Anderson had paid to the Mooneys for the property. We affirm in part, modify in part, and remand.

Walter and Margaret Mooney, husband and wife, owned certain real property in joint tenancy. In April 1975 Anderson approached Walter with an offer to purchase a portion of the real property, the number of acres and the price forming the basis for the dispute in this action. After Walter Mooney had discussed the matter with his wife, he and Anderson viewed the property together and Anderson alleges the agreement was made at that time. In April 1975 Anderson paid the Mooneys the sum of $1,000 and an additional $5,500 in May of that same year. The evidence discloses that conversations between Walter Mooney and Anderson concerned the purchase of a tract of land on the Mooneys' property. Anderson contends that the westerly boundary of the property to be purchased was to be marked by an old dead tree located on the river bank and extending east to the border of the Mooneys' 40-acre tract, later determined to be approximately 25 acres, and that the total price was to be $11,500. The Mooneys claim that the agreement with Anderson was for Anderson to buy either 12½ acres for $11,500 or the 25-acre tract, as marked by the dead tree, for $25,000.

The evidence submitted to the court further discloses: that during the conversations between Anderson and Walter Mooney they agreed that a surveyor would be hired to survey the property and determine the number of acres and the legal description of the tract; that a local attorney would be requested to prepare the necessary papers after Walter had secured the abstract of title; that subsequent to the discussions between Anderson and Walter Mooney, Anderson's hired man removed a fence on the property without objection from the Mooneys; that later in the summer of 1975 Anderson talked with Walter Mooney about harvesting the alfalfa crop that grew on the premises and that Anderson had the hay cut and baled three times during that season; that in the fall of 1975 Anderson's hired man plowed the tillable land on the 25-acre tract without objection from the Mooneys, but that subsequently Walter Mooney informed Anderson that he had plowed too much land; that in October 1975 Anderson informed Walter Mooney that the deed to the 25-acre tract and a check for $5,000 were in the local attorney's office and that Walter should have the deed executed and pick up the check; that in the early spring of 1976 Anderson took a deed to the Mooneys and asked them to execute it but they refused; and that later in the spring of 1976 Anderson's hired man was sent out to fertilize the land in question and Margaret Mooney requested him to leave because, according to her, Anderson did not own any of the property.

In April 1976 Anderson filed an action against the Mooneys asking for specific performance of the oral contract between himself and the Mooneys. The matter was tried to the court without a jury and Anderson, Walter and Margaret Mooney, and others testified. The attorney with whom Anderson and Walter Mooney had discussed the matter had died, however, in the spring of 1976. After trial, the district court entered its memorandum decision and findings of fact and conclusions of law and order for judgment decreeing that no

agreement as to the price or quantities of the land to be sold was made between Anderson and the Mooneys. The trial court's pertinent findings and conclusions are as follows:

"FINDINGS OF FACT

"I.

"That the Co-defendants Walter Mooney and Margaret Mooney, were and are at all times during these proceedings the fee simple owners as joint tenants and not as tenants in common of the following described real property:

[Description.]

"II.

"That the Plaintiff and the Defendants did at various times and places, all within Traill County, North Dakota, between April of 1975 and April of 1976, negotiate, converse, and orally communicate amongst each other as to the purchase by the Plaintiff and sale by the Defendants of a portion of the real property described above.

"III.

"That on or about April 2, 1975 the Plaintiff tendered onto the Defendant, Walter Mooney, the sum of $1,000.00, and on May 15, 1975 the additional sum of $5,500.00.

"IV.

"That the Spring of 1975, and following farming seasons the Plaintiff did farm 25 acres of land, more or less, within the larger parcel described above with the oral consent of the Defendant, Walter Mooney, but with the rent payable to be determined by later mutual agreement.

"V.

"That in the Spring of 1976, the Plaintiff and Defendants were unable to agree upon the terms of sale, what portion of the parcel was to be sold, and in particular, the Defendant, Margaret Mooney, refused to sign any of the instruments of conveyance.

"VI.

"That the Plaintiff pursuant to Court order retained possession of a portion of said land for the farming season of 1976 and 1977.

"CONCLUSIONS OF LAW

.     .     .     .

"II.

"That the Plaintiff and Defendants did negotiate for the purchase and sale, of a portion of said real property, but that no agreement as to the price or quantities of the land to be sold was made among them.

"III.

"That the Plaintiff did pay unto the defendant, Walter Mooney, the sum of $6,500.00 and that [Walter Mooney] shall repay the said sum unto the Plaintiff.

"IV.

That the Defendants are entitled to the reasonable rental value of said parcel for the years 1975, 1976, and 1977, which the Court finds to be $750.00 per year, for a total rent due of $2,250.00.

.     .     .     .

Anderson presents two issues on appeal:

1. Are the findings and conclusion of the trial court that there was no meeting of the minds between Anderson and the Mooneys in their oral negotiations for the sale of land clearly erroneous?

2. Is the trial court's order denying specific performance of the contract clearly erroneous?

The parties agree that the finding of the trial court that there was no meeting of the minds is governed by Rule 52(a) of the North Dakota Rules of Civil Procedure. That rule provides, in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially . . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . ."

See also, e. g., *Pride Laboratories, Inc. v. Sentinel Butte Farmers Elevator Company*, 268 N.W.2d 474 (N.D.1978).

■ We have held that a finding of fact is clearly erroneous "when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." See, e. g., *Mehus v. Mehus*, 278 N.W.2d 625, 633 (N.D.1979). We have also said that in applying this rule this court gives great weight to findings and inferences of the trial court, and will set them aside only if they are found to be clearly erroneous based upon all the evidence, and not merely because the appeals court might have reached a different result. See, e. g., *Kee v. Redlin*, 203 N.W.2d 423 (N.D.1972).

In its memorandum opinion the trial court held that it must find "a meeting of the minds of all parties involved, as to all necessary elements, including the issue of the acreage involved, to form a valid contract."[1] The trial court found that the land was owned "in joint tenancy and both

husband and wife were necessary parties to the sale of the land and must be shown to have knowledge of the terms of the oral agreement in order for the plaintiff to prevail by way of specific performance . . ." The trial court noted that the principal disputed item at issue was the acreage involved in the alleged land sale agreement. The trial court's findings are essentially explained in the following paragraph from the memorandum opinion:

"The plaintiff offered considerable evidence to support the understanding that the sale of land was understood between the parties to be for acreage westward over to a point running north and south from a dead tree, and which upon a later survey was determined to be 24.96 acres. This was disputed by testimony of the defendants, and with reference to the defendant, Mrs. Margaret Mooney, a joint owner, it appears to the Court there was never any meeting of the minds between her and Mr. Anderson as to what acreage was involved in the sale which had been arranged between the plaintiff and her husband, Mr. Walter Mooney."

Anderson agrees that there must be a meeting of the minds, as the trial court held, in order to form a binding contract.

Section 9–01–02, N.D.C.C., provides that, with other elements, the consent of the parties is essential to the existence of a contract. Section 9–03–01, N.D.C.C., requires that the consent of the parties to a

---

1. This court criticized the phrase "meeting of the minds" in *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977):

"The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract. It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties. As was said by Brian in *Yearbook*, 17 Edward IV, 1,

'It is trite learning that the thought of man is not triable, for the devil himself knows not the thought of man.'

And, as Oliver Wendell Holmes, Jr., said in *O'Donnell v. Clinton*, 145 Mass. 461, 14 N.E. 747 (1888), and Justice Cardozo quoted in *Sokoloff v. National City Bank*, 239 N.Y. 158, 145 N.E. 917, 920, 37 A.L.R. 712 (1924):

'Assent, in the sense of the law, is a matter of overt acts, not of inward unanimity in motives, design, or the interpretation of words.'

See also Restatement, Contracts, 71 and 233.

"Professor Williston sums it all up by saying that the term 'meeting of the minds' is a 'familiar cliché, still reëchoing in judicial dicta,' and that it is a nineteenth-century expression which seems to be contrary to the rule 'long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent' as the law requires. Williston on Contracts, 3d Ed., § 22."

contract must be communicated to each other, and Section 9–03–16, N.D.C.C., provides that consent is not mutual unless the parties all agree upon the same thing in the same sense. However, Anderson argues that certain actions and inactions on the part of the Mooneys prove that there was such a meeting of the minds. He argues that it is unlikely that he and Walter Mooney would have gone to the office of an attorney if they had not in fact established the full and final terms of the agreement between themselves; that it is most logical that the parties would go to the attorney's office only if they had completed the transaction; and that his version of the facts therefore is most believable. Anderson also argues that allowing him and his hired man onto the property to take down a fence, remove debris, cut and bale three crops of alfalfa, and plow the land without any protest of any kind by the Mooneys indicates an agreement for the sale of the land in question. Consent can be communicated with effect by some act or omission of the party contracting by which he intends to communicate it or which necessarily tends to such communication. Sec. 9–03–17, N.D.C.C. The acceptance of consideration offered with a proposal is an acceptance of the proposal. Sec. 9–03–20, N.D.C.C.

■ The "meeting of the minds" or consent of the parties to the transaction is not all that we are asked to consider. The briefs of both parties discuss at length the question whether there has been a sufficient part-performance of the alleged oral contract to take the case out of the statute of frauds. The facts involved in determining this question have at least an incidental bearing on the fundamental question of the existence of an oral contract. See *Syrup v. Pitcher*, 73 N.W.2d 140 (N.D.1955).[2]

Section 9–06–04(4), N.D.C.C., the statute of frauds, requires that an agreement for the sale of real property be in writing. It also requires that if such an agreement is made by an agent of the party sought to be charged, the authority of the agent must be in writing and subscribed by the party to be charged. Section 47–10–01, N.D.C.C., provides that an estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing subscribed by the party disposing of the real property or by his agent authorized by writing. Yet Section 47–10–01 further states that its provisions do not abridge the power of any court to compel specific performance of any agreement for the sale of real property in case of part-performance thereof. Anderson's arguments that the evidence proves a meeting of the minds between himself and the Mooneys are based primarily upon his actions and the actions or inactions of the Mooneys that, he contends, are acts of part-performance. The Mooneys contend that these actions or inactions are not acts of part-performance but are consistent with their understanding of the purchase by Anderson of the smaller parcel of land.

The parties cite *Parceluk v. Knudtson*, 139 N.W.2d 864 (N.D.1966), in support of their positions. In *Parceluk*, the plaintiff brought an action to quiet title in her share of her father's estate. The defendants alleged that, subsequent to the closing of the estate, the plaintiff had orally sold her interest in the real property to the defendants. The plaintiff contended that the al-

**2.** Rule 8(c), N.D.R.Civ.P., requires that the statute of frauds be pleaded as an affirmative defense. See also *Kadrmas v. Kadrmas*, 264 N.W.2d 892 (N.D.1978). The answer to Anderson's complaint does not show that the statute of frauds was pleaded as an affirmative defense. However, the statute of frauds and specific performance were discussed in Anderson's brief and the Mooneys' brief to the trial court without objection, were referred to in the memorandum decision of the trial court, and were argued in the briefs of both Anderson and the Mooneys to this court, again without objection. The facts involved in whether or not there was an oral agreement and whether or not there was sufficient part-performance of the alleged oral contract to remove the case from the statute of frauds are essentially the same, and, in view of no objection by Anderson, we will consider that the issue of the statute of frauds has been tried by the express or implied consent of the parties. See Rule 15(b), N.D.R. Civ.P.

leged sale was in violation of the statute of frauds—Section 9–06–04—and Section 47–10–01, N.D.C.C., but the defendants argued that part-performance of the oral contract for the sale of land took the contract out of the operation of the statute of frauds. This court said:

> ". . . whenever acts have been done which are of such a nature as to be consistent only with the existence of a contract for the sale of real property, the case is held to be taken out of the statute of frauds." 139 N.W.2d at 871.[3]

The court concluded that mere partial payment of money consideration by the buyer was not of itself sufficient part-performance to take a contract out of the statute of frauds, but when considered in connection with other facts, such payment was entitled to weight. The court then stated:

> "The acts relied upon for partial performance, in order to be sufficient to relieve an oral agreement from the effect of the statute of frauds, must be of such a nature as to be incomprehensible and not capable of being understood unless related to the contract to convey an interest in land, and payment of money is not enough unless followed by other acts such as possession or the making of valuable improvements.

> "The defendants, in order to show partial performance of an oral contract to sell the plaintiff's interest in the real estate, must show not only the terms of such agreement—which we believe they have shown in this case—but they must also show such acts on the part of the defendants which would permit the court to find that the partial performance was substantial and that such partial performance on the part of the defendants put them in such a situation that nonperformance of the oral agreement by the plaintiff would amount to fraud upon the defendants. In other words, it must appear that the acts relied upon by the defendants have been done solely with a view to performing the oral contract which they allege plaintiff had made to sell her interest in the real estate." 139 N.W.2d at 871–872.

*Syrup v. Pitcher, supra,* concerned an action for specific performance of an oral agreement to convey property. The trial court found that Pitcher and Syrup entered into an oral agreement for the purchase and sale of 80 acres of land for a price of $1,600, to be paid upon delivery of merchantable title. Shortly thereafter, the parties went to the office of an attorney, arranged with him to handle the details of the transfer, and left with him the purchase money that he was to use to pay the balance on a contract by which Syrup had purchased the 80 acres and other lands and to otherwise attend to the details of the sale and transfer. Syrup subsequently was killed in an accident. The trial court also found that Pitcher, shortly after the time of the oral agreement, took possession with the knowledge and consent of Syrup and proceeded to make certain improvements on the land by grubbing trees and brush and breaking and tilling the soil. The trial court entered judgment for the vendee, Pitcher. The estate of Syrup appealed to this court and demanded a trial anew as permitted by the statute in effect at that time. This court, with one judge dissenting, reversed the decision of the trial court, holding that the burden of proof rests on one who seeks to have a contract specifically performed to establish the terms of a contract upon which he relies which are essential to a decree of specific performance; that where the vendee in an oral contract for the sale of real estate seeks to avoid the impact of the statute of frauds by showing partial performance, he must by clear and definite proof establish a contract that possesses all the elements and features necessary to the

---

3. In *Buettner v. Nostdahl,* 204 N.W.2d 187 (N.D.1973), this court reviewed several of its prior decisions relating to oral agreements for the sale of real property and the statute of frauds. The court quoted the above statement from *Parceluk* and observed:

"The inference to be drawn from that statement for this case is that the part performance to take the case out of the statute of frauds must be consistent only with the existence of the alleged contract." 204 N.W.2d at 195.

specific performance of any agreement, except the written memorandum required by the statute; that improvements made on the land, in order to constitute part-performance of an oral contract for its sale, must be valuable, substantial, and permanent; and that where a purchaser takes possession with the consent of the vendor, under an oral contract for sale of the land, and while in such possession makes valuable, substantial, and permanent improvements on the premises in reliance upon the contract, there is a sufficient part-performance to take the case out of the statute of frauds, although no part of the purchase price is paid. Although 14 to 20 acres of land were broken up, approximately half before and half after the death of Syrup, and the land was grubbed of trees and brush, the court found that improvements claimed by Pitcher failed to meet the test that improvements made on land have to be valuable, substantial, and permanent in order to constitute part-performance of an oral contract for its sale.

The facts in *Syrup* are not unlike those with which we are here concerned. In *Syrup*, however, the court was permitted to review the facts anew, whereas we are limited to determining whether the findings of the trial court are clearly erroneous.

In *Buettner v. Nostdahl*, 204 N.W.2d 187, 195 (N.D.1973), this court quoted with approval the following statement from *Miller v. McCamish*, 78 Wash.2d 821, 828–829, 479 P.2d 919, 923–924 (1971):

"As evidenced by the test required in this state to successfully assert part performance, the court's overriding concern *is precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement*:

" 'The first requirement of the doctrine that part performance of an oral contract exempts it from the provisions of the statue of frauds is that the contract be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract.  *  *  *

" 'A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance.  *  *  *

\*     \*     \*     \*     \*     \*

" 'Another requirement of the doctrine  *  *  *  is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient. *  * (Citations omitted.)' *Granquist v. McKean*, 29 Wash.2d 440, 445, 187 P.2d 623, 626 (1947)." [Emphasis and ellipses in *Miller v. McCamish, supra.*]

Here, there is a dispute as to the terms of the agreement, i. e., the amount of property to be sold by the Mooneys and purchased by Anderson. That dispute is the basis of the trial court's decision that there was no "meeting of the minds." In reviewing the evidence and testimony in this action it is also apparent that Anderson's actions and the Mooneys' actions or inactions, which Anderson contends established part-performance on his part and an acceptance on the part of the Mooneys, are consistent with the purchase of 12½ acres as well as the purchase of 25 acres of land. The one act that might be an exception to that conclusion was the plowing of the 25 acres by Anderson, but the plowing or "striking out" of the acres which Anderson believed the Mooneys had agreed to sell was the act that resulted in the realization by the Mooneys that Anderson believed he was buying more than 12½ acres. That act was not necessarily inconsistent with the discussions between Walter Mooney and Anderson because Walter Mooney testified that he would be willing to sell 25 acres at $1,000 per acre. From the time of the plowing of the land, however, the actions of the Mooneys are consistent with the idea that there was a dispute or misunderstanding as to the number of acres that were to be purchased

for the price of $11,500. Thus we cannot conclude that the trial court's finding that there was no agreement was clearly erroneous. Moreover, we cannot conclude that Anderson's actions constituted a sufficient part-performance of the contract to remove the contract from the operation of the statute of frauds.

If we were to construe the testimony and evidence in a manner most favorable to Anderson, a standard of review not applicable in this case, we could not conclude that there was an agreement between Anderson and Margaret Mooney, who owns the property in joint tenancy with her husband, Walter. Thus, in view of the allegations in his complaint and the arguments that he advanced at trial and in his brief to this court, Anderson could not prevail even if his negotiations with Walter Mooney resulted in a contract between those two individuals.

Because the question of interest was raised in the trial court but not disposed of, and only casually raised on appeal, making it difficult for this court to determine, we remand for a determination of interest due both parties unless they agree to stipulate as to interest.

The judgment is affirmed in part and modified in part and the case is remanded.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.